2007-NMCA-020

150 P.3d 1037

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Javier RIVAS, Defendant–Appellant.**

**No. 26,199.**

Court of Appeals of New Mexico.

Dec. 15, 2006.

Certiorari Denied, No. 30,186, Jan. 26, 2007.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Catherine A. Begaye, Will O'Connell, Assistant Appellate Defenders, Santa Fe, NM, for Appellant.

## OPINION

KENNEDY, Judge.

{1} Defendant Javier Rivas appeals his conviction for possession of a controlled sub-

stance (cocaine). He argues that the district court incorrectly denied his motion to suppress evidence. Defendant raises three issues: (1) the police officer improperly seized Defendant without individualized reasonable suspicion; (2) Defendant's consent to search was not sufficiently attenuated from the improper seizure and was thus tainted by it; and (3) in searching Defendant, the officer exceeded the scope of the search to which Defendant had consented. We reverse Defendant's conviction, holding that his motion to suppress evidence should have been granted.

## BACKGROUND AND FACTS

{2} At the suppression hearing, Officer William Marion of the Roswell Police Department testified as to the following events. On the evening of April 8, 2005, he stopped to investigate a parked car with its engine running that appeared to have no one inside. Upon shining his patrol car's spotlight on the car, he saw that there was someone (Lorenzo Mendoza) in the driver's seat, but slouched down as if trying to hide. As Officer Marion got out of his patrol car, he observed Defendant leaving a house across the street. Officer Marion observed that Mendoza had bloodshot, watery eyes, that there was a slight odor of intoxicants, and that there was an open case of beer on the passenger-side floor. Mendoza said he was waiting for his friend. At around this time, Defendant walked up to the car and attempted to enter the passenger side. Officer Marion told Defendant, "Hey. Wait a minute. Time-out, dude. You better step back." He then told Defendant to go to the front of the car "where I can keep better eyes on you." Officer Marion asked Mendoza if he could search the car and Mendoza agreed. Officer Marion and another officer, Officer Scribner, who had arrived placed Mendoza with Defendant at the front of the car and began to search it.

{3} At some point Officer Scribner handcuffed Mendoza and told Officer Marion that he had seen Mendoza throw down a piece of paper and try to kick it under the car. Upon inspection, the paper was found to contain marijuana. Defendant started to walk away. Officer Marion grabbed his wrist and told him he was not free to go yet and that he

was being detained. Officer Marion handcuffed Defendant and told him he was not under arrest. He asked Defendant if he had any weapons in his possession, and Defendant said no. Officer Marion asked Defendant if he could search him, and Defendant said, "[t]hat's okay." Upon searching Defendant, Officer Marion felt a large soft bulge in Defendant's right pants pocket, and pulled out money and a bandanna. While placing these items on the hood of the car, a small plastic bag containing white powder fell out. Defendant said it was cocaine, which a test later verified.

{4} Defendant did not testify at the suppression hearing. He pleaded no contest to possession of cocaine, reserving his right to appeal the denial of his motion to suppress evidence.

## STANDARD OF REVIEW

{5} A motion to suppress evidence involves a mixed question of fact and law. *State v. Urioste*, 2002–NMSC–023, ¶ 6, 132 N.M. 592, 52 P.3d 964.

> [O]ur review of this case involves two parts: the first is a factual question, which we review for substantial evidence; the second is a legal question, which we review de novo.
>
> With regard to the factual question, we review the facts in a light most favorable to the prevailing party, as long as the facts are supported by substantial evidence. As a reviewing court we do not sit as a trier of fact [because] the district court is in the best position to resolve questions of fact and to evaluate the credibility of witnesses.

*State v. Vandenberg*, 2003–NMSC–030, ¶¶ 17–18, 134 N.M. 566, 81 P.3d 19 (alteration in original) (internal quotation marks and citations omitted).

{6} Although Defendant's motion to suppress asserts that his seizure violated both the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution, he has not argued on appeal that the New Mexico Constitution affords him greater protection than that afforded under the United States Constitution. We therefore review his claim only under the Fourth Amendment. *State v. Jason L.*,

2000–NMSC–018, ¶ 9, 129 N.M. 119, 2 P.3d 856.

## DISCUSSION

### A. SEIZURE UPON INDIVIDUALIZED REASONABLE SUSPICION

 {7} For purposes of the Fourth Amendment, a seizure occurs "whenever a police officer accosts an individual and restrains his freedom to walk away." *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

> Investigatory detention is permissible when there is a reasonable and articulable suspicion that the law is being or has been broken. A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law. Unsupported intuition and inarticulate hunches are not sufficient.

*Jason L.,* 2000–NMSC–018, ¶ 20, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citations omitted). "[I]nvestigatory detentions need only be supported by reasonable suspicion of criminal activity[.]" *State v. Patterson,* 2006–NMCA–037, ¶ 15, 139 N.M. 322, 131 P.3d 1286.

> The Fourth Amendment is violated when an officer detains an individual with no more than a generalized suspicion, or unarticulated hunch or suspicion, because the government's interest in crime prevention will not outweigh the intrusion into the individual's privacy. The detention must also be reasonably related to the circumstances that initially justified the stop, and the scope of the investigation may expand only when the officer has reasonable and articulable suspicion of other criminal activity.

*Id.* ¶ 16 (internal quotation marks and citations omitted).

{8} In *Patterson,* an officer came upon a car stopped in a dark area with one of the four occupants standing outside the car's rear door. *Id.* ¶ 2. Finding this person's explanation for their presence suspicious, the officer searched him and found drug paraphernalia. He also observed an open container of beer on the rear floor of the car. *Id.* ¶ 3. The officer then asked the other occupants, including defendant Patterson, the front-seat passenger, for identification. *Id.* ¶ 4. We held that a seizure occurred at this point, that there was no individualized suspicion connecting Patterson with the open-container offense or any other offense, and that evidence of the subsequently discovered drugs and paraphernalia should have been suppressed. *Id.* ¶ 28. In the other case consolidated with *Patterson,* defendant Swanson was ordered to remain in the car in which he was a passenger. All three occupants of the car were said to be acting nervously and avoiding eye contact. *Id.* ¶ 9. Swanson was subsequently asked to exit the car and to produce identification. *Id.* ¶ 10. After an officer found a marijuana pipe in the driver's possession, Swanson was asked "whether he would mind emptying his pockets." *Id.* ¶ 11. We held that Swanson had been seized when ordered to remain in the car, and that evidence of the drugs discovered as a result of the search should have been suppressed. We found that the occupants' nervous behavior provided only generalized suspicion with nothing specific to Swanson. *Id.* ¶ 29; *see also State v. Jones,* 114 N.M. 147, 151, 835 P.2d 863, 867 (Ct.App.1992) (holding that wearing style of clothing associated with gang membership and being in the presence of known gang member did not provide reasonable suspicion sufficient to justify detention); *State v. Affsprung,* 2004–NMCA–038, ¶¶ 4, 21, 135 N.M. 306, 87 P.3d 1088 (holding that officer's routine practice of requiring passengers in car validly stopped for traffic offense to produce identification for "officer safety" and to "identify who you're dealing with," where passenger was not suspected of criminal activity and was not free to leave, required suppression of subsequently discovered evidence).

{9} We are unable to meaningfully distinguish the present case from *Patterson.* The parties agree that Defendant was seized in the course of his encounter with the police, although they differ as to the point in the encounter at which the seizure occurred. Because the record is somewhat unclear as to whether Defendant was seized at the point when the officer directed him to stand in front of the car, for purposes of our analysis we conclude that the seizure occurred when

the officer grabbed Defendant's wrist a few minutes later. The district court concluded in its written decision on Defendant's motion that Officer Marion "reasonably was suspicious of the Defendant's conduct in simply walking past what was happening with Mr. Mendoza." At the suppression hearing, Officer Marion testified regarding Defendant's initial approach to the car while the officers were talking to Mendoza: "It's not a normal traffic stop when somebody tries to—first, I mean, he observed that we were talking to the driver of the car. And then he still tries to get into the passenger side of the car. I thought that was a little bit weird." We agree that most people, upon observing a police officer speaking with the driver of a parked car, probably would stop short of the car rather than walk up to it and try to get in. Even so, we fail to see how Defendant's somewhat odd behavior supports a likelihood that he had committed or was about to commit a crime. Defendant was doing nothing more than going about business that would have been perfectly ordinary in the absence of the officers. His actions corroborated the information Mendoza had supplied to explain his presence, i.e., that he was waiting for a friend. When asked to "step back," Defendant complied without comment or resistance. We decline to impose an expectation that persons will know beforehand what types of ordinary behavior might be unacceptable to police in circumstances such as these.

{10} The State relies on *State v. Williamson*, 2000–NMCA–068, 129 N.M. 387, 9 P.3d 70, for the broad proposition that the presence of drugs on one person in a car in itself justifies asking another occupant about drugs. In *Williamson*, we held that after a passenger in a car was found to possess drugs, officers could reasonably expand the scope of their investigation of the defendant driver's possible impairment to inquire whether he also had any drugs on him. *Id.* ¶ 10. In *Patterson*, we distinguished *Williamson* as follows:

In [*Williamson* ], the officer had detained the defendant for a traffic violation and became suspicious about possible impairment. This Court held that the defendant driver's possible impairment combined with the discovery of drugs on the passenger supported individualized suspicion sufficient to detain the defendant further for investigation into the possibility of the defendant's possession of drugs.

*Patterson*, 2006–NMCA–037, ¶ 26, 139 N.M. 322, 131 P.3d 1286 (citation omitted). In the present case, Defendant was not individually suspected of any specific crime at the time he was seized, and was not even present at the start of the officer's investigation of Mendoza.

{11} When Officer Marion was asked what his concern was when he grabbed Defendant's arm to restrain him from walking away, he testified as follows:

First and foremost, my safety, the driver of the car, as well as Officer Scribner's, our safety. I don't—everything was happening pretty fast. We had one guy that tried to, if you will, ditch illegal narcotics. And then this guy, Mr. Rivas, trying to walk away or get a gun. I don't know what he was trying to do. Or conceal narcotics on us.

Officer Marion testified, regarding the effect of the discovery of drugs near Mendoza, "People try to protect their drugs. Usually where there are drugs, we find guns."

{12} This Court addressed the issue of officer safety in *In re Jason L.*, 1999–NMCA–095, 127 N.M. 642, 985 P.2d 1222, *rev'd by State v. Jason L.*, 2000–NMSC–018, 129 N.M. 119, 2 P.3d 856. There, we concluded that it was objectively reasonable for the officers to conduct a pat-down search of the defendant after finding two guns on his companion. *In re Jason L.*, 1999–NMCA–095, ¶ 14, 127 N.M. 642, 985 P.2d 1222. Reversing, our Supreme Court stated: "Individualized, particularized suspicion is a prerequisite to a finding of reasonable suspicion, and the district court did not err in concluding that the State had not established individualized, particularized suspicion that [the d]efendant had committed or was about to commit a crime." *Jason L.*, 2000–NMSC–018, ¶ 22, 129 N.M. 119, 2 P.3d 856.

{13} In the present case, the circumstances regarding officer safety are less compelling than in *Jason L.* Here, there was no

testimony supporting the likely presence of weapons other than the officer's bare assertion that "[u]sually where there are drugs, we find guns." The parties did not ask the officer whether this was true even in the case of possession of a small quantity of marijuana, as was found here, as opposed to trafficking scenarios involving large quantities of drugs. We observe that in *Patterson*, companions of both defendants were found to possess drugs before the defendants were searched, and this did not lead to an automatic conclusion that the searches were justified because guns were likely to be present. Even if Officer Marion's assertion could be shown to be generally true, it does not amount to individualized suspicion that Defendant, on whom drugs had not yet been found, had committed or was about to commit a crime.

{14} We decline the State's invitation to follow *State v. Watkins*, 207 Ariz. 562, 88 P.3d 1174 (Ct.App.2004), which held that a person, not himself suspected of any crime, could be properly detained as a witness to the crimes of another person. *Id.* at 1178. In the present case, there was no testimony at the suppression hearing that the officer's detention of Defendant was in any way motivated by his status as a potential witness to Mendoza's offenses, nor did the district judge mention this possibility in his written decision on the motion to suppress. Further, as Defendant points out in his reply brief, courts that have allowed detention of witnesses on this basis appear to limit it to situations where there are elements of a violent crime and exigent circumstances. *See, e.g., id.* at 1179 (holding that witness to encounter between victim and persons who had burglarized her residence and assaulted her was properly detained shortly after the incident when victim and investigating officers encountered him on the street); *see also Williamson v. United States*, 607 A.2d 471, 473 (D.C.1992) (approving officer's stop of vehicle after the officer heard gunshots and believed its occupants to be either witnesses or participants). In the present case, neither violence nor exigent circumstances were involved.

{15} Accordingly, we hold that Defendant was detained without individualized reasonable suspicion that he had committed or was about to commit a crime, in violation of the Fourth Amendment.

## B. ATTENUATION OF CONSENT FROM SEIZURE

{16} The parties agree that Defendant consented to be searched after Officer Marion detained him, although Defendant argues that in the context of the detention he only consented to a search for weapons. As we conclude above, the detention was improper because the officer had no individualized reasonable suspicion that Defendant was committing or had committed a crime. Defendant argues both that his consent to be searched was coerced because of the circumstances of his improper detention, and that the consent was not sufficiently attenuated from the detention to remove the taint of the Fourth Amendment violation. The fruit of the poisonous tree doctrine bars the admission of evidence obtained after an illegal arrest or detention except in very limited circumstances. *State v. Jutte*, 1998–NMCA–150, ¶ 22, 126 N.M. 244, 968 P.2d 334.

> In order for evidence obtained after an illegality, but with the voluntary consent of the defendant, to be admissible, there must be a break in the causal chain from the illegality to the search. The proper question in evaluating whether a consent was tainted by prior illegality is whether there was sufficient attenuation between the illegality and the consent to search. In deciding whether the consent is sufficiently attenuated from the Fourth Amendment violation, we consider the temporal proximity of the illegal act and the consent, the presence or absence of intervening circumstances, and the purpose and flagrancy of the official misconduct.

*State v. Taylor*, 1999–NMCA–022 ¶ 28, 126 N.M. 569, 973 P.2d 246 (internal quotation marks, citations, and alterations omitted).

{17} As far as can be determined from the record, the officer asked for Defendant's con-

sent to be searched almost immediately after grabbing his wrist, telling him he was not free to leave, and handcuffing him. Thus, there was no time for intervening circumstances to occur, and no break in the causal chain.

{18} Because we conclude that Defendant's consent to be searched was insufficiently attenuated from his improper detention and thus violated the Fourth Amendment, we need not consider the voluntariness of his consent or whether he intended it to apply only to a search for weapons.

## CONCLUSION

{19} We reverse the district court's denial of Defendant's motion to suppress evidence, vacate his conviction, and remand to the district court for proceedings consistent with this opinion.

{20} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge and IRA ROBINSON, Judge.