This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

  Plaintiff-Appellee,

v.                 **NO. 29,206**

**ANTHONY L.,**

  Child-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Freddie J. Romero, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Nancy M. Hewitt, Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

Child puts forward twelve issues, all stemming from the district court's denial of his motion to suppress evidence gathered during an investigatory detention and subsequent pat-down search. We issued a calendar notice proposing to reverse the district court on April 23, 2009. The State filed a memorandum in opposition on May 11, 2009, arguing the officer had sufficient particularized suspicion to justify Child's search and seizure. We need not reach the issue of the seizure because we hold that the subsequent search was in violation of Child's constitutional protections, and we therefore reverse the district court.

The material facts in this case are undisputed. The district court's findings indicate that on October 6, 2008, at 9:45 a.m., the Roswell Police received a call from dispatch indicating a fight was in progress on East Byrne street in Roswell. [RP 44] Two officers quickly responded. [Id.] Upon arriving, the officers observed a white van blocking the street and two individuals, including Child, walking in their general direction. [Id.] Apparently one of the officers, Officer Corn, recognized Child from a previous occasion not involving criminal activity. [Id. at 45]

The other officer, Officer Sanford, attempted to stop the youths by saying "come here so I can talk to you." [RP 45; MIO 3] Child's companion stopped to talk to the officer, but Child continued walking. [Id.; MIO 3-4] Officer Corn then continued to try to talk to Child, but Child continued walking away, offering only that

the fight was "down there." [RP 45] Officer Corn testified Child was "anxious" and appeared not to want to talk to Officer Corn. [RP 45-46; MIO 4]

After Child again indicated where the fight was occurring, Officer Corn stopped Child and forced Child to put his hands on the police car. [RP 46] Officer Corn then conducted a pat-down frisk of Child and discovered a gun. [Id.] The officer testified, at the time Child was stopped, Child was a "person of interest," but the officer did not know if Child was involved in any criminal activity or was just a possible witness to the fight. [Id.; MIO 4]

The district court found Officer Corn had conducted a valid investigatory stop of Child and denied the motion to suppress. [RP 48, 50] We note the district court entered extensive findings and conclusions in this case. [Id. at 44-50] Specifically, it found when the officer patted down Child he reasonably suspected Child was involved with the earlier fight "either as a participant or a witness." [Id. at 46] According to the district court, the officer's suspicions were reasonable because they were based on:

> [Child's] demeanor that he wanted to be away from the area, his statements that he knew about the fight, that he was a known gang member, that Officer Corn knew [Child] should have been in school at that time of morning, and that he believed he might be carrying "something." [Id.]

However, after Child's arrest, Officer Corn told Child's mother that Child had not

been in trouble and that the gun was found during a "routine search." [Id. at 47]

Our review of a trial court's decision on a motion to suppress evidence involves mixed questions of fact and law. *State v. Funderburg*, 2008-NMSC-026, ¶ 10, 144 N.M. 37, 183 P.3d 922. We review factual determinations by the trial court under a substantial evidence standard and legal questions de novo. *State v. Duran*, 2005-NMSC-034, ¶ 19, 138 N.M. 414, 120 P.3d 836. The Court considers "whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party; all reasonable inferences in support of the court's decision will be indulged in, and all inferences or evidence to the contrary will be disregarded." *State v. Werner*, 117 N.M. 315, 317, 871 P.2d 971, 973 (1994) (internal quotation marks and citation omitted).

"For purposes of the Fourth Amendment, a seizure occurs 'whenever a police officer accosts an individual and restrains his freedom to walk away.'" *State v. Rivas*, 2007-NMCA-020, ¶ 7, 141 N.M. 87, 150 P.3d 1037 (quoting *Terry v. Ohio*, 392 U.S. 1, 16, 88 S. Ct. 8868 (1968)). A brief detention for investigatory purposes is a seizure entitled to Fourth Amendment protections." *State v. Contreras*, 2003-NMCA-129, ¶ 5, 134 N.M. 503, 79 P.3d 1111; *see also State v. Walters*, 1997-NMCA-013, ¶ 10, 123 N.M. 88, 934 P.2d 282 ("Case law recognizes three types of police-citizen encounters: (1) arrests, which require probable cause, (2) investigatory stops, which require

4

reasonable suspicion, and (3) community caretaking encounters. The first two are seizures, invoking constitutional protections."). Once an individual has been seized:

> Police may initiate a protective patdown search for weapons if they have specific and articulable facts which they contend support their assessment of danger. The search must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. A *Terry* search may not be expanded without probable cause into a search for evidence of a crime. If a protective search goes beyond that which is necessary to determine whether weapons are present, the fruits of the search are suppressed.

*State v. Pierce*, 2003-NMCA-117, ¶ 9, 134 N.M. 388, 77 P.3d 292 (internal quotation marks and citations omitted).

Because we hold that the patdown search following the stop was unconstitutional, we need not analyze the stop. We have previously considered a search under very similar circumstances. In *State v. Eli L.*, 1997-NMCA-109, 124 N.M. 205, 947 P.2d 162, two officers were called to the scene of a "disturbance" across from the local school. Upon their arrival at the scene, the officers conducted a protective frisk of one of the children. The child had previously been suspended for gang activity and had allegedly been shouting profanities across the street at the school principal, although the officers admitted they had not witnessed the child committing any crime. *Id.* ¶ 2. The officers also testified the child had whistled a "gang whistle" to communicate a warning to other gang members that police were on their way and that the child was "sagging," which is a method of wearing pants very

low in order to conceal a weapon. Id. ¶ 3.

We noted a child's identification as a gang member was not sufficient to demonstrate individualized suspicion of criminal activity to support a search of the child when the police had only generalized suspicion other gang members had engaged in criminal activity or wrongdoing. *Id.* The district court in this case attempted to distinguish the officer's basis for the search from those of the officers in *Eli L.* by noting that the current case involved an alleged fight rather than just a disturbance of the peace. [RP 49] While this is true, thus possibly suggesting some greater level of violence than in *Eli L.*, the facts articulated by the officer did not describe the type of fight, what violence, if any, Child had participated in, and further the officer himself appears to have testified that, he also thought Child could simply have been a witness. [RP 46] We hold the officer's vague belief was not enough to justify the weapons search. The officer was required to have reasonable suspicion of actual criminal activity by Child, absent a specific reason to believe Child was armed and dangerous. *See id.* ¶ 13.

As to believing Child was armed and dangerous, the officer also failed to articulate sufficient reason he would have reasonably believed his safety to be compromised without the frisk. The officer's search was apparently based on the fact that Child was not in school, Child had alleged gang connections, and Child wanted

6

to leave the area. We hold these facts, without more, were insufficient to provide a basis for the search. *See, e.g.*, *State v. Pablo R.*, 2006-NMCA-072, ¶ 14, 139 N.M. 744, 137 P.3d 1198 (explaining that even a search by a school official requires reasonable suspicion the child has committed or is about to commit a crime and that a child's failure to attend class is not sufficient to justify even a protective frisk); *State v. Vandenberg,* 2003-NMSC-030, ¶¶ 28-31, 46, 134 N.M. 566, 81 P.3d 19 (noting nervousness is only a justification for search when the officer provides specific reasons why the nervousness displayed by the defendant caused the officer to reasonably believe his or her safety would be compromised and that a defendant's original refusal to cooperate should not be considered in determining whether the officer had reasonable and articulable suspicion a defendant was armed and dangerous).

We note the district court relied on *State v. Talley*, 2008-NMCA-148, 145 N.M. 127, 196 P.3d 742, rather than *Eli L.*, in its decision. Our examination of these two cases indicates the facts of *Eli L.* are much more analogous to the current case. Furthermore, *Talley* is distinguishable from the current case. In *Talley,* the officers based their suspicion the suspect was armed and dangerous on how he had acted toward them on previous occasions. *Talley,* 2008-NMCA-148, ¶ 22. Such justification is absent in the current case. The officers in this case were not relying on

previous interactions with the suspect.  The only previous experience the officers had with Child was through Child's attendance at Roswell High School, where Officer Corn had given a school talk.  [RP 45]  Officer Corn had never interacted with Child in any situation regarding criminal activity.  [Id.]

We therefore reverse the district court's order denying Child's motion to suppress.

**IT IS SO ORDERED.**


_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:


_____
**CELIA FOY CASTILLO, Judge**


_____
**TIMOTHY L. GARCIA, Judge**