This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.                                                                    **NO. 31,718**

**JAMES TOMMIE,**

Defendant-Appellee,

**APPEAL FROM THE DISTRICT COURT OF McKINLEY COUNTY**
**Robert A. Aragon, District Judge**

Gary K. King, Attorney General
Joel Jacobsen, Assistant Attorney General
Margaret E. McLean, Assistant Attorney General
Santa Fe, NM

for Appellant

Bennett J. Baur, Acting Chief Public Defender
Santa Fe, NM
Vicki W. Zelle, Assistant Appellate Defender
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**VIGIL, Judge.**

{1}     The State appeals from a district court order granting Defendant's motion to suppress evidence based on an unlawful, warrantless stop. On appeal, the State argues that the stop was supported on any of three grounds: (1) Defendant could briefly be detained as a witness to a recently-committed crime; (2) there was reasonable suspicion to believe that Defendant had been involved in criminal activity; and (3) the officer was acting in a community caretaker capacity. We affirm the district court.

**BACKGROUND**

{2}     Sergeant Cindy Romancito of the Gallup Police Department provided the only testimony at Defendant's suppression hearing. Officer Romancito testified that around 11:30 a.m. she was dispatched to a tattoo parlor because of a report of a fight in progress between an employee and a father and son. When she arrived, a person standing outside told her that the vehicle involved was leaving and that it was a silver truck or an Avalanche. Officer Romancito could see the truck driving off in the distance. Officer Romancito testified that she followed the truck because she wanted to conduct a welfare check and to see if the individuals were involved. She caught up with the Avalanche as it was going up and down rows of a Wal-Mart parking lot. She activated her emergency lights and the Avalanche pulled into a parking space. She stated that, at the time she stopped Defendant's vehicle, she did not know whether a crime had been committed or whether Defendant was a perpetrator, a victim, or a

2

witness of any crime. Officer Romancito did not see Defendant commit any traffic offense that would have served as a basis for the stop. Defendant was subsequently charged with Aggravated Driving While Intoxicated and related offenses based on the investigation that ensued.

**{3}** Defendant filed a motion to suppress, challenging the validity of the stop. The State's response simply stated that it denied the allegations, and requested an evidentiary hearing. The State argued in its opening statement that "the officer had a duty to investigate and reasonable suspicion that the individuals in the vehicle she followed had been involved in a fight or violent dispute." The State reiterated this general duty to investigate theory in its closing argument. The district court granted Defendant's motion after finding that "[t]he officer did not know if a crime had been committed, did not know if the individuals in the pick-up were witnesses to the incident, victims of the incident, or assailants in the incident[.]" The State appeals.

**STANDARD OF REVIEW**

**{4}** "A motion to suppress evidence involves a mixed question of fact and law." *State v. Vandenberg*, 2003-NMSC-030, ¶ 17, 134 N.M. 566, 81 P.3d 19. "Thus, our review of this case involves two parts: the first is a factual question, which we review for substantial evidence; the second is a legal question, which we review de novo." *Id.* "We view the facts in the manner most favorable to the prevailing party and defer

to the district court's findings of fact if substantial evidence exists to support those findings." *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964.

**DISCUSSION**

**A.     Reasonable Suspicion**

{5}     "[A]n officer may detain a person in order to investigate possible criminal activity." *State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted).   "Investigatory detention is permissible when there is a reasonable and articulable suspicion that the law is being or has been broken." *Id.* (internal quotation marks and citation omitted).   "A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *Id.* "Evidence obtained must be suppressed if it is the fruit of an illegal detention." *State v. Cardenas-Alvarez*, 2000-NMCA-009, ¶ 25, 128 N.M. 570, 995 P.2d 492, *aff'd,* 2001-NMSC-017, 130 N.M. 386, 25 P.3d 225.

{6}     In the present case, there is no dispute that Defendant was seized when Officer Romancito stopped his vehicle in the Wal-Mart parking lot.  Defendant argued below that the seizure was unlawful because there was no individualized suspicion of criminal activity. *See, e.g., Jason L.*, 2000-NMSC-018, ¶ 20 (noting that reasonable suspicion is a "particularized suspicion, based on all the circumstances that *a*

4

*particular individual, the one detained*, is breaking, or has broken, the law." (Emphasis added.)). We agree. Given the limited information available to the officer, it was not reasonable for her to conclude that Defendant had broken the law. On appeal, the State repeatedly asserts that Officer Romancito was investigating a violent crime. However, as Defendant points out, the information available to Officer Romancito was simply too generalized to justify a seizure of Defendant. In other words, although a battery is one of the possibilities of what occurred at the tattoo parlor, our standard is reasonable suspicion that Defendant had committed a crime, as opposed to a mere possibility that he had done so. *See State v. Prince*, 2004-NMCA-127, ¶ 17, 136 N.M. 521, 101 P.3d 332 (observing that a generalized suspicion is insufficient to justify a detention).

{7}     The lack of particularized suspicion in this case is similar to the situation addressed in *State v. Burciaga*, 1993-NMCA-151, 116 N.M. 733, 866 P.2d 1200. In that case, there was a dispatch regarding a domestic disturbance at a residence. *Id.* ¶ 2. On the way to the residence, the officer noticed the defendant, who he knew was associated with the residence, driving in his truck. *Id.* In *Burciaga* we rejected the State's contention that the stop was reasonable in light of the "all-too-often violent nature of domestic disputes." *Id.* ¶ 10. Similar to the assumption made by the State in this case, the opinion concluded that the officer lacked sufficient information that

5

the dispute had turned violent and that a crime had been committed. Arguably, the district court's determination of lack of reasonable suspicion in this case is even more compelling, because under our standard of review we defer to the district court's factual interpretation of the ambiguity found in the phrase "fight in progress." *See Urioste*, 2002-NMSC-023, ¶ 6 (viewing facts on appeal in a manner most favorable to the prevailing party where substantial evidence supports the findings).

**{8}** Also, in considering the reasonableness of the officer's actions, "we should ask ourselves what other actions a reasonable officer would be expected to take under similar circumstances, if not those taken in this instance." *State v. Funderburg*, 2008-NMSC-026, ¶ 32, 144 N.M. 37, 183 P.3d 922. Officer Romancito could have taken down the vehicle's license plate and followed up on her investigation if the subsequent interview with the employer referenced in the dispatch indicated that a crime by Defendant had been committed. We reject the State's claim that stopping the vehicle was a more direct approach to investigate the incident, since this presupposes that there is reasonable suspicion to permit the stop in the first place.

**B.      Witness Detention**

**{9}** Alternatively, the State argues that this Court should adopt the following three-part test for when it is constitutionally permissible for officers to detain potential witnesses to crimes:

(i) The officer has reasonable cause to believe that a misdemeanor or felony, involving danger of forcible injury to persons or of appropriation of or danger to property, has just been committed near the place where he finds such person, and

(ii) the officer has reasonable cause to believe that such person has knowledge of material aid in the investigation of such crime, and

(iii) such action is reasonably necessary to obtain or verify the identification of such person, or to obtain an account of such crime.

{10} Notably, our case law has previously declined to adopt this new independent ground for making a warrantless detention. In *State v. Rivas*, 2007-NMCA-020, ¶ 14, 141 N.M. 87, 150 P.3d 1037, this Court reversed the district court's denial of the defendant's motion to suppress on the basis that the officer lacked reasonable suspicion that the defendant had committed or was about to commit a crime. In reversing, *Rivas* declined the State's invitation to follow out-of-state authority applying this test as a means of justifying the defendant's detention based on his status as a witness to the crime of another person. *Id.* In declining the approach, *Rivas* considered that "there was no testimony at the suppression hearing that the officer's detention of [the d]efendant was in any way motivated by his status as a potential witness." *Id.* *Rivas* also considered that when courts have allowed detention of witnesses to crimes, they have limited it to situations where there are elements of a violent crime and exigent circumstances, notably absent in *Rivas*. *Id.* Thus, while *Rivas* briefly alludes to this new theory of witness detention, its discussion is limited

7

and does not decide whether we would even allow the detention of a person based on his or her status as a witness, even assuming the matter was addressed below and that exigency was present.

{11} Here, the doctrinal basis for witness detention advocated by the State on appeal was not raised below. As such, it was not preserved. In order to preserve an issue for appellate review, "it must appear that a ruling or decision by the district court was fairly invoked[.]" Rule 12-216(A) NMRA; *see State v. Gomez*, 1997-NMSC-006, ¶ 14, 122 N.M. 777, 932 P.2d 1; *see also Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717 ("Where the record fails to indicate that an argument was presented to the court below, unless it is jurisdictional in nature, it will not be considered on appeal.").

{12} The State concedes that it did not "fully articulate" its argument below, but argues that the district court was made aware of the constitutional provisions at play. However, we do not interpret the State's argument below to articulate in any meaningful way the legal theory now being advanced on appeal: that New Mexico should adopt a new basis for warrantless detention that is guided by a fact-intensive, three-part test being applied in some other jurisdictions. As indicated, the State did not mention this legal theory either in its written response to Defendant's motion to suppress, or at the suppression hearing, where it argued broad notions of reasonable

suspicion and the duty to investigate. This is not adequate to preserve the issue for appeal. *See, e.g.*, *State v. Janzen*, 2007-NMCA-134, ¶ 11, 142 N.M. 638, 168 P.3d 768 (observing that, "while the State may have a number of different theories as to why the evidence should not be suppressed, in order to preserve its arguments for appeal, the State must have alerted the district court as to which theories it was relying on in support of its argument in order to allow the district court to make a ruling thereon"); *Spectron Dev. Lab. v. Am. Hollow Boring Co.*, 1997-NMCA-025, ¶ 32, 123 N.M. 170, 936 P.2d 852 (noting that general principles of preservation prohibit the raising of new theories on appeal); *American Bank of Commerce v. United States Fidelity & Guar. Co.*, 1973-NMSC-078, ¶ 2, 85 N.M. 478, 513 P.2d 1260 (noting that a party cannot change its theory on appeal). We therefore decline to address the State's arguments on the merits.

**C.    Community Caretaker**

{13}    Finally, the State argues that Officer Romancito was acting in her capacity of a community caretaker. The community caretaker doctrine recognizes that police sometimes act outside of their role as criminal investigators. *See State v. Ryon*, 2005-NMSC-005, ¶ 13, 137 N.M. 174, 108 P.3d 1032. In doing so, an officer does not need reasonable suspicion nor does probable cause bind police when they effect a seizure. *Id.* ¶ 24 ("[W]arrants, probable cause, and reasonable suspicion are not required when

police are engaged in activities that are unrelated to crime-solving."). Instead, we consider whether the officer acted reasonably under the particular facts of the case. *Id.* In considering the propriety of the officer's actions, courts must balance "the public need and interest furthered by the police conduct against the degree of and nature of the intrusion upon the privacy of the citizen." *Id.* (internal quotation marks and citation omitted). For an officer to act as a community caretaker, he or she needs to have been motivated by a desire to aid and not a desire to investigate. *Id.* ¶ 25.

{14} Here, the district court found that the sole reason to stop the vehicle was to investigate the incident at the tattoo parlor. Substantial evidence supports the district court's finding. *See State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (observing that substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (internal quotation marks and citation omitted)). Specifically, Officer Romancito answered affirmatively when she was asked if the purpose of the stop was to find out what happened at the tattoo parlor. Although she had earlier testified that she made the stop to conduct a welfare check, we resolve these evidentiary conflicts in favor of the district court's findings. *See State v. Bloom*, 1977-NMSC-016, ¶ 5, 90 N.M. 192, 561 P.2d 465 ("Conflicts in evidence are to be resolved by the finder of the facts[.]"). As such, the State may not rely on the community caretaker exception to justify the stop in this

10

case. *See Ryon*, 2005-NMSC-005, ¶ 25.

**CONCLUSION**

{15}     Viewing the facts that were before the district court in the light most favorable to its decision to grant Defendant's motion to suppress, we affirm the district court.

{16}     **IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

**M. MONICA ZAMORA, Judge**

_____

**J. MILES HANISEE, Judge**