2006-NMCA-037

131 P.3d 1286

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Ferney PATTERSON, Defendant–Appellant.**

**State of New Mexico, Plaintiff–Appellee,**

v.

**Dominique Lee Swanson a/k/a Dominic Swanson, Defendant–Appellant.**

**Nos. 24,853, 25,049.**

Court of Appeals of New Mexico.

Feb. 3, 2006.

Certiorari Denied, No. 39,688, March 14, 2006.

**324**

Patricia A. Madrid, Attorney General, Santa Fe, NM, Jacqueline R. Medina, Assistant Attorney General, Albuquerque, NM, for Appellee in No. 24,853.

John Bigelow, Chief Public Defender, Catherine A. Begaye, Assistant Appellate Defender, Santa Fe, NM, for Appellant in No. 24,853.

Patricia A. Madrid, Attorney General, James O. Bell, Assistant Attorney General, Santa Fe, NM, for Appellee in No. 25,049.

John Bigelow, Chief Public Defender, Santa Fe, NM, Josephine H. Ford, Assistant Appellate Defender, Albuquerque, NM, for Appellant in No. 25,049.

## OPINION

WECHSLER, Judge.

{1} These two appeals allow us to address the requirement that law enforcement officers have individualized, particular suspicion with regard to a passenger in a vehicle prior to initiating a seizure, when the circumstances of the encounter and the actions of other passengers contribute to the suspicious nature of the encounter. In both cases, the officers approached occupants of a car stopped in a business parking lot, found drug paraphernalia in a patdown search of an occupant of the car, and observed other suspicious behavior or circumstances. An officer asked Defendant Patterson for his identification. Defendant Swanson was initially asked to remain in the vehicle. The district court in both cases denied motions to suppress evidence obtained during the encounters. Because we conclude that there was no individualized reasonable suspicion that Defendant Patterson and Defendant Swanson had been or were engaged in criminal activity, we reverse the convictions in both cases.

## FACTS OF *STATE V. PATTERSON*

{2} Defendant Patterson appeals his conviction for possession of methamphetamine after pleading guilty to the charge. The facts are undisputed. While on patrol at about 10:40 p.m., Officer Ray Merritt observed a car drive into the parking lot of a closed business, behavior which he thought was odd. Because there had been several burglaries in the twenty-block area, Officer Merritt pulled his patrol car behind the stopped car to investigate why it had stopped at that location. Someone, later identified as William Wilson, was standing outside the open rear passenger door on the driver's side of the car. Defendant Patterson was sitting in the front passenger seat. There were also two women in the car, the driver and a passenger in the backseat.

{3} Officer Merritt identified himself and asked Wilson what they were doing there. Wilson stated that they were there to pick up a truck from a friend, but he did not know the friend's name. Officer Merritt observed that there was no truck in the area and found this answer to be suspicious. As he was talking with Wilson, Officer Merritt observed an open can of beer on the backseat floorboard closest to where Wilson had been sitting behind the driver. He conducted a patdown search of Wilson for officer safety because he was alone and it was dark. This search revealed a glass smoking pipe, and he placed Wilson in handcuffs. After Wilson was secured in the patrol car and as Officer Merritt was ready to make contact with De-

fendant Patterson, a second officer arrived on the scene.

{4} After Officer Merritt discovered the drug paraphernalia on Wilson's person and saw the open container of beer on the floorboard near where Wilson had been sitting, he asked all the occupants of the vehicle for their identification. Officer Merritt testified that he asked for the identifications to check for warrants for arrest, to see "who [he] was dealing with," and to give him "a point of reference" if there were burglaries later that evening. He testified that he had no reason to detain Defendant Patterson initially, but that he did have Defendant Patterson's identification card.

{5} Officer Merritt recognized Defendant Patterson's name from his identification card and recognized the picture on the card as being that of someone he had seen being booked a few days earlier. A check on Defendant Patterson's identification card revealed that it was valid and that there were no warrants for his arrest. Although he did not know why Defendant Patterson had been booked a few days previously, Officer Merritt testified that he believed Defendant Patterson was violating conditions of release because he was in a car with an open container of beer and because he was with someone who had drug paraphernalia. Based on this suspicion, Officer Merritt asked Defendant Patterson to get out of the car to ask about his conditions of release and to check to see whether he was on probation.

{6} As Defendant Patterson was getting out, Officer Merritt saw Defendant Patterson pull something out of his pocket and move as if throwing it toward the center console. Officer Merritt immediately handcuffed Defendant Patterson because of concern for his own safety and because he suspected that Defendant Patterson had discarded contraband into the vehicle. After looking inside the vehicle, Officer Merritt saw a clear plastic sandwich-type baggie containing a white powdery substance, which later tested positive for methamphetamine. Defendant Patterson was then arrested and, as he was being searched, told Officer Merritt that he had a syringe in his sock.

{7} Defendant Patterson was charged with possession of a controlled substance (methamphetamine) in violation of NMSA 1978, § 30-31-23(D) (1990) (amended 2005) and possession of drug paraphernalia in violation of NMSA 1978, § 30-31-25.1(A) (2001). After his motion to suppress was denied, Defendant Patterson pleaded guilty to possession of methamphetamine.

## FACTS OF *STATE V. SWANSON*

{8} On August 23, 2003, at around 1:30 a.m., Officer Terry McCoy observed a car pull into a parking lot of a business about 150 yards before a DWI roadblock. There were three occupants of the car: the driver; Defendant Swanson, seated in the front passenger seat; and another passenger, seated in the backseat.

{9} Officer McCoy stopped behind the car and told the driver and Defendant Swanson to stay in the vehicle. Officer McCoy asked why they were avoiding the roadblock. The backseat passenger stated that the car was overheating and leaking fluid. Two other officers, who had arrived on the scene, looked under the hood but saw nothing wrong with the car. Officer McCoy noted that "all three occupants of the car were very nervous and avoiding eye contact." He also observed the backseat passenger rummaging around the floorboard area.

{10} The officers then asked the occupants to step out of the car so that they could be interviewed separately. When asked for identification, Defendant Swanson provided a Colorado driver's license. Officer McCoy asked Defendant Swanson why the driver was trying to avoid the DWI checkpoint. Defendant Swanson replied that he did not know.

{11} One of the other officers found a marijuana pipe in the driver's possession. After this discovery, Officer McCoy asked Defendant Swanson if he had anything the officers should know about. Defendant Swanson said he did not. Officer McCoy asked Defendant Swanson whether he would mind emptying his pockets. Defendant Swanson answered "sure," displaying the contents of his pockets, including items that were alleged to be drug paraphernalia. When Officer McCoy asked Defendant Swan-

son if he had anything else, Defendant Swanson handed him a coat, which contained marijuana and methamphetamine.

{12} Defendant Swanson was charged with possession of a controlled substance (methamphetamine) in violation of Section 30–31–23(D), possession of one ounce or less of marijuana in violation of Section 30–31–23(B)(1), and possession of drug paraphernalia in violation of Section 30–31–25.1(A). Defendant Swanson subsequently entered a plea to one charge of possession of methamphetamine.

## STANDARD OF REVIEW

{13} In reviewing the denial of a motion to suppress evidence, this Court will view the facts in the light most favorable to the decision below and will review the application of the law to these facts, including determinations of reasonable suspicion, under a de novo standard of review. *See generally State v. Urioste*, 2002–NMSC–023, ¶ 6, 132 N.M. 592, 52 P.3d 964; *State v. Affsprung*, 2004–NMCA–038, ¶ 6, 135 N.M. 306, 87 P.3d 1088. With respect to the issues we find dispositive, Defendants do not argue that the New Mexico Constitution affords greater protection than the Federal Constitution and we will assume, without deciding, that both constitutions provide the same protection against unreasonable searches and seizures in this context. *See State v. Ochoa*, 2004–NMSC–023, ¶ 6, 135 N.M. 781, 93 P.3d 1286; *cf. State v. Gomez*, 1997–NMSC–006, ¶¶ 22–23, 122 N.M. 777, 932 P.2d 1 (outlining the requirements for preserving a state constitutional issue).

## GENERAL FOURTH AMENDMENT PRINCIPLES

{14} The Fourth Amendment to the United States Constitution establishes an individual's right to be free from unreasonable searches and seizures. Generally, a search or seizure is an intrusion that requires a warrant based upon a demonstration of probable cause. *See State v. Wagoner*, 1998–NMCA–124, ¶ 9, 126 N.M. 9, 966 P.2d 176; *see also Maryland v. Dyson*, 527 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999) (per curiam) ("The Fourth Amendment generally requires police to secure a warrant before conducting a search."). The Fourth Amendment, however, establishes a reasonableness standard that permits lesser intrusions without warrants, based on a balance of "the degree of intrusion into an individual's privacy against the interest of the government in promoting crime prevention and detection." *State v. Jones*, 114 N.M. 147, 150, 835 P.2d 863, 866 (Ct.App.1992); *see Terry v. Ohio*, 392 U.S. 1, 20–27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

{15} Based on this balancing of interests, an officer may briefly detain an individual suspected of criminal activity without breaching Fourth Amendment rights. *See State v. Werner*, 117 N.M. 315, 317, 871 P.2d 971, 973 (1994). While arrests require probable cause and either a warrant or exigent circumstances, *Campos v. State*, 117 N.M. 155, 158–59, 870 P.2d 117, 120–21 (1994), investigatory detentions need only be supported by reasonable suspicion of criminal activity, *State v. Contreras*, 2003–NMCA–129, ¶ 5, 134 N.M. 503, 79 P.3d 1111.

{16} To justify detention, suspicion must be particular to the individual being detained. *See State v. Jason L.*, 2000–NMSC–018, ¶ 20, 129 N.M. 119, 2 P.3d 856. The Fourth Amendment is violated when an officer detains an individual with no more than a generalized suspicion, or unarticulated hunch or suspicion, because the government's interest in crime prevention will not outweigh the intrusion into the individual's privacy. *Jason L.*, 2000–NMSC–018, ¶ 20, 129 N.M. 119, 2 P.3d 856; *Jones*, 114 N.M. at 150, 835 P.2d at 866; *State v. Cobbs*, 103 N.M. 623, 626, 711 P.2d 900, 903 (Ct.App.1985). The detention must also be reasonably related to the circumstances that initially justified the stop, and the scope of the investigation may expand only when "the officer has reasonable and articulable suspicion" of other criminal activity. *State v. Taylor*, 1999–NMCA–022, ¶ 20, 126 N.M. 569, 973 P.2d 246.

{17} The constitutional requirement of reasonable suspicion, thus, must be articulated and particular to the individual being detained. To avoid confusion, we will refer to articulated, particular reasonable suspicion

as "individualized suspicion" throughout the remainder of this opinion.

## SEIZURE OF DEFENDANTS' PERSONS

{18} We first address whether Defendants were seized as part of an investigatory detention that required the officers to have an individualized suspicion that Defendants were engaged in criminal activity. There can be circumstances in which officers may have consensual encounters with citizens without invoking Fourth Amendment protections. *See Affsprung*, 2004–NMCA–038, ¶ 12, 135 N.M. 306, 87 P.3d 1088. A seizure takes place when the officer detains the individual in such a way that a reasonable person would not feel free to leave, given the totality of the circumstances. *Jason L.*, 2000–NMSC–018, ¶ 15, 129 N.M. 119, 2 P.3d 856. We review the district courts' determinations of the facts for substantial evidence, but the issue of whether Defendants were free to leave is a legal question, which we review de novo. *Id.* ¶ 19.

{19} We analyze under *Affsprung*, 2004–NMCA–038, ¶¶ 12–18, 135 N.M. 306, 87 P.3d 1088, whether Defendant Patterson was seized when Officer Merritt asked him for his identification. In *Affsprung*, we held that, in an investigation after an ordinary stop for a traffic violation, when "the officer requests both the driver's and the passenger's identification in connection with the violation and nothing more than a generalized concern about officer safety," there is a seizure with regard to the passenger. *Id.* ¶ 18. We acknowledge that the case of *State v. Patterson* differs factually from *Affsprung*. The car in *State v. Patterson* was already stopped with its lights off in a business district where burglaries had taken place. There were three passengers, rather than one. Officer Merritt did not activate his emergency equipment. There was no traffic violation leading to a stop, and the focus of the investigation when Officer Merritt requested Defendant Patterson's identification was not a faulty license plate light as in *Affsprung* but a violation of the open container law. *See id.* ¶ 2.

{20} Even though *Affsprung* differs factually, it nevertheless provides guidance in determining whether a passenger in a detained vehicle would feel free to leave the area and to refuse an officer's request for identification. In making this determination, three factors are to be considered: "(1) the conduct of the police, (2) the person of the individual citizen, and (3) the physical surroundings of the encounter." *Id.* ¶ 12 (internal quotation marks and citation omitted); *Jason L.*, 2000–NMSC–018, ¶ 15, 129 N.M. 119, 2 P.3d 856. In *State v. Patterson*, prior to asking Defendant Patterson for his identification, Officer Merritt parked his patrol car behind the stopped car and identified himself as a police officer to the occupants. Defendant Patterson was the front seat passenger. The area was a commercial area and it was dark. Because Officer Merritt believed that another passenger's answer to his inquiry about the reason for their presence was suspicious, Officer Merritt conducted a patdown search of this passenger, who was already standing outside the car. After he learned that this passenger possessed drug paraphernalia and observed an open container of beer on the rear floorboard near where this passenger had been sitting, Officer Merritt asked all the occupants of the car for their identification.

{21} Although the investigation was initially focused on another passenger and not the driver as in *Affsprung*, Officer Merritt's request of Defendant Patterson, a front-seat passenger, for his identifying information "can only reasonably be viewed as an integral part of the officer's ongoing investigatory detention." *Affsprung*, 2004–NMCA–038, ¶ 15, 135 N.M. 306, 87 P.3d 1088. As in *Affsprung*, the officer asked for identifying information in order to check for warrants and "to know who he was dealing with." *See id.* ¶ 19. Officer Merritt had clearly identified himself as a police officer, although he had not engaged his emergency equipment. He had just conducted a patdown search of another passenger. Based on this show of authority and the request for the driver's identification, as well as Officer Merritt's explicit purpose in asking for the identification, a reasonable person in Defendant Patterson's position would not feel free to leave when Officer Merritt asked for identifying information. *See State v. Boblick*,

2004–NMCA–078, ¶ 10, 135 N.M. 754, 93 P.3d 775. Defendant Patterson was seized at this point in the encounter as part of Officer Merritt's ongoing investigatory detention of the occupants of the vehicle. As stated above, investigatory detentions must be reasonable under the Fourth Amendment, which requires individualized suspicion.

{22} The seizure analysis in *State v. Swanson* is simpler. Officer McCoy drove his vehicle behind the car in which Defendant Swanson was an occupant and instructed Defendant Swanson and the other occupants to remain in the car. The State does not argue that Defendant Swanson was free to leave. A seizure had taken place. This seizure, like the seizure of Defendant Patterson, was illegal unless it was justified by individualized suspicion of criminal activity.

## INDIVIDUALIZED REASONABLE SUSPICION

{23} Because Defendants' encounters with the officers in both cases were investigatory detentions, they could have been justified by "a reasonable suspicion that the law has been or is being violated." *Taylor*, 1999–NMCA–022, ¶ 7, 126 N.M. 569, 973 P.2d 246 (internal quotation marks and citation omitted). The critical question in both cases then becomes whether the officers had an individualized suspicion that Defendants were violating any law when they subjected Defendants to detention.

{24} This Court has consistently held that a finding of individualized suspicion requires the articulation of the suspicion in a manner that is particularized with regard to the individual who is stopped. In *Jones*, we declined to adjust the Fourth Amendment's balance between the interest of the individual and the government to accept the state's proposition that a generalized suspicion of gang membership was sufficient to support individualized suspicion of particular criminal activity. *Jones*, 114 N.M. at 150–51, 835 P.2d at 866–67. In *Affsprung*, we held that the defendant's mere presence as a passenger in a vehicle stopped for a traffic violation does not provide individualized suspicion for the officer to ask for the passenger's identification.

*Affsprung*, 2004–NMCA–038, ¶ 20, 135 N.M. 306, 87 P.3d 1088.

{25} Our Supreme Court set forth the requirement of individualized suspicion in *Jason L.* In that case, the defendant was approached by an officer after the officer observed the defendant and his companion looking at the officer, with the companion looking repeatedly and adjusting his waistband underneath his coat. *Jason L.*, 2000–NMSC–018, ¶¶ 12–13, 129 N.M. 119, 2 P.3d 856. Upon the continued adjusting of the waistband and nervous behavior by the companion, the officer searched the companion and found a gun. *Id.* ¶ 13. After the officers found an additional gun on the companion, the officer searched the defendant. *Id.* ¶ 5. Our Supreme Court concluded that the conduct of the companion could not justify the detention of the defendant because there was no individualized suspicion that the defendant had committed or was about to commit a crime. *Id.* ¶ 22. In reaching that conclusion, our Supreme Court stated that there was no evidence that the defendant was involved in any disturbance and that it was not appropriate to rely on the fact that weapons were found on the companion. *Id.* ¶¶ 21–22. Viewing the totality of the circumstances, the behavior of the defendant was not criminal and did not give rise to individualized suspicion. *Id.*

{26} On the other hand, *State v. Williamson*, 2000–NMCA–068, 129 N.M. 387, 9 P.3d 70, illustrates circumstances in which an officer articulates more than a generalized suspicion of criminal activity in an investigative stop. In that case, the officer had detained the defendant for a traffic violation and became suspicious about possible impairment. *Id.* ¶ 2. This Court held that the defendant driver's possible impairment combined with the discovery of drugs on the passenger supported individualized suspicion sufficient to detain the defendant further for investigation into the possibility of the defendant's possession of drugs. *Id.* ¶¶ 10–15.

{27} Applying the requirement of individualized suspicion in the two cases on appeal indicates that the threshold has not been met. In *State v. Patterson*, Officer Merritt discovered drug paraphernalia in the posses-

sion of another occupant of the car and saw an open container in the car. The State contends that Officer Merritt's request for Defendant Patterson's identification was justified as part of the investigation of a violation of the open container law and an individualized suspicion that the occupants of the car were using illegal drugs.

{28} The difficulty with the State's argument is that it does not point to any facts particular to Defendant Patterson that would lead to individualized suspicion that he was violating a law. *See Jason L.*, 2000–NMSC–018, ¶ 21, 129 N.M. 119, 2 P.3d 856 (noting that New Mexico has not dispensed with the need for individualized suspicion and affirming the lower court's determination that the actions of the defendant's companion could not be used to justify the defendant's detention). The only fact concerning Defendant Patterson was that he was present in the car. This mere presence was not sufficient to create an individualized suspicion that Defendant Patterson was violating the open container law. *See* NMSA 1978, § 66–8–138 (2001) (prohibiting any person from knowingly drinking alcoholic beverages or having "in his possession on his person" an open container in a motor vehicle on a public highway); *Jason L.*, 2000–NMSC–018, ¶¶ 21–22, 129 N.M. 119, 2 P.3d 856. The fact that a can of beer may easily be passed between seats does not raise any greater individualized suspicion that Defendant Patterson possessed "on his person" an open container of alcohol. Officer Merritt had testified that he did not observe Defendant Patterson with an open container or observe any open container in the area near Defendant Patterson. Under these circumstances, Officer Merritt did not have an individualized suspicion that Defendant Patterson, as a passenger, was violating the open container law. Likewise, Officer Merritt articulated no facts beyond Defendant Patterson's mere presence that could justify individualized suspicion of possession of contraband.

{29} In *State v. Swanson*, the driver turned away from a roadblock, the backseat passenger lied about the reason and rummaged around the floorboard, and all three occupants, including Defendant Swanson, exhibited nervous behavior. An officer's statement concerning a person's nervousness without an articulation of specific reasons of concern is insufficient to support a finding of individualized suspicion. *See State v. Vandenberg*, 2003–NMSC–030, ¶ 31, 134 N.M. 566, 81 P.3d 19. Officer McCoy did not articulate any specific concern with regard to Defendant Swanson. Any concerns Officer McCoy may have had were merely generalized based upon the behavior of the other occupants of the car. We do not attribute the behavior of the other two occupants to Defendant Swanson because Officer McCoy did not produce any evidence or indication, other than nervousness, that Defendant Swanson had knowledge of criminal activity on the part of the others or that there was concerted activity. *Id.* No individualized suspicion justified the detention of Defendant Swanson.

## CONCLUSION

{30} Because we conclude that Defendants were illegally seized and that the district courts should have suppressed any evidence discovered subsequent to the illegal seizures, we reverse Defendants' convictions. *See Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *State v. Bedolla*, 111 N.M. 448, 455, 806 P.2d 588, 595 (Ct.App.1991).

{31} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN and CYNTHIA A. FRY, Judges.