This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **NO. 29,077**

**ROBERT RUTHERFORD,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Carl J. Butkus, District Judge**

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

Defendant appeals the denial of his motion to suppress. We conclude that Defendant was detained without justification, contrary to his Fourth Amendment rights. Although Defendant gave the police permission to enter his motel room, the consent flowed directly from an illegal detention. We therefore conclude that the motion to suppress was improperly denied.

**BACKGROUND**

We briefly summarize the underlying events in the light most favorable to the ruling rendered below. *See State v. Flores*, 2008-NMCA-074, ¶ 2, 144 N.M. 217, 185 P.3d 1067 ("We summarize the evidence from the suppression hearing in the light most favorable to the district court order.").

On the evening of February 4, 2006, Officer Gerald Shelden of the Albuquerque Police Department parked across from a motel located in a "bad area" known for narcotics trafficking. Using binoculars, he saw an individual walking back and forth from Room 219 to an adjoining catwalk, apparently looking for someone in the parking lot below. Through the open door to the motel room, Officer Shelden could see baggies arranged in rows on a table. The individual then picked something up from the table, left the room, and met a parked vehicle, where a transaction took place. Based on his training and experience, Officer Shelden recognized the conditions and behavior to be consistent with drug trafficking.

Shortly after the transaction was completed, Officer Shelden saw the individual

return to Room 219, then re-emerge, knock on the door to Room 203, and enter. After a very brief interlude, the individual returned to Room 219. At that point Officer Shelden called for backup assistance.

Officer Herman Padilla responded to the scene and was asked to make contact with the individual in Room 203. When he knocked on the door, Defendant answered. Not knowing who else might be inside, Officer Padilla had Defendant step out of the room and proceeded with a few basic inquiries. Defendant then asked if he could return to his room. Officer Padilla denied the request, on grounds that he had more questions to ask.

Since he was barefoot, Defendant asked for permission to retrieve his shoes. Officer Padilla denied the request. Defendant then asked Officer Padilla to retrieve the shoes, and Officer Padilla agreed.

When Officer Padilla entered the motel room, he found the shoes where Defendant had indicated that they would be, next to a night stand or a dresser. At the same time, he saw two pieces of crack cocaine in plain view on top of the night stand or dresser. This cocaine became the subject of Defendant's motion to suppress.

**SEIZURE OF DEFENDANT'S PERSON**

First, we must determine whether Defendant was seized. "[W]hether a person has been seized . . . is a mixed question of law and fact." *State v. Jason L.*,

2000-NMSC-018, ¶ 19, 129 N.M. 119, 2 P.3d 856. Identifying the surrounding circumstances is a factual inquiry, which we review for substantial evidence. *Id.* Determining whether those circumstances rose to the level of a seizure is a legal inquiry, which we review de novo. *Id.*

"Not every encounter between a law enforcement officer and a citizen triggers Fourth Amendment scrutiny." *State v. Garcia*, 2008-NMCA-044, ¶ 16, 143 N.M. 765, 182 P.3d 146, *rev'd on other grounds*, 2009-NMSC-046, ¶ 41, 147 N.M. 134, 217 P.3d 1032. "[O]fficers may have consensual encounters with citizens without invoking Fourth Amendment protections." *State v. Patterson*, 2006-NMCA-037, ¶ 18, 139 N.M. 322, 131 P.3d 1286. However, a "seizure takes place when the officer detains the individual in such a way that a reasonable person would not feel free to leave, given the totality of the circumstances." *Id.*

Turning to the circumstances presented in this case, as previously described, Officer Padilla knocked on the motel room door, and when Defendant answered, Officer Padilla "had him step out." After answering inquiries about occupancy and the name under which the room had been taken, Defendant asked if he could return to his room. Officer Padilla denied the request on grounds that he had some more questions to ask. Defendant therefore remained outside.

The State characterizes the foregoing as a consensual "knock and talk" type of

4

encounter. By contrast, Defendant contends that he was seized when Officer Padilla denied his request to terminate the interview and prohibited him from returning to his motel room.

We agree that Officer Padilla could be said to have initiated contact with Defendant pursuant to a valid knock-and-talk approach. *See generally Flores*, 2008-NMCA-074, ¶ 9 ("[T]he 'knock and talk' procedure does not violate the Fourth Amendment[.]"). However, the encounter quickly evolved into an investigatory detention.

"Police contact is consensual so long as a reasonable person would feel free to disregard the police and go about his business, or to decline the officers' requests or otherwise terminate the encounter." *State v. Scott*, 2006-NMCA-003, ¶ 18, 138 N.M. 751, 126 P.3d 567 (alteration, internal quotation marks, and citation omitted). "However, if an officer conveys a message that an individual is not free to walk away, by either physical force or a showing of authority, the encounter becomes a seizure under the Fourth Amendment." *State v. Gutierrez*, 2008-NMCA-015, ¶ 9, 143 N.M. 522, 177 P.3d 1096 (internal quotation marks and citation omitted). When Officer Padilla effectively denied Defendant's request to terminate the encounter and prevented Defendant from returning to his motel room, the arguably consensual nature of the encounter ceased. Insofar as Defendant was not free to leave, Defendant was

seized for Fourth Amendment purposes. *See State v. Garcia*, 2009-NMSC-046, ¶ 39, 147 N.M. 134, 217 P.3d 1032 ("While police are free to engage people consensually to gather information, when they convey a message that compliance with their requests is required, the reasonable person would not feel free to leave and a seizure has occurred." (alteration, internal quotation marks, and citation omitted)).

**VALIDITY OF THE DETENTION**

Having determined that Defendant was in fact seized, we must next determine whether the detention was permissible. We apply de novo review. *Jason L.*, 2000-NMSC-018, ¶ 20.

Since Defendant was briefly questioned in a public area without being handcuffed or otherwise subjected to severe restraint, the encounter should be classified as an investigatory detention. *See generally State v. Werner*, 117 N.M. 315, 317-18, 871 P.2d 971, 973-74 (1994) (identifying factors that may be considered when distinguishing between an investigatory detention and an arrest, including the length of the detention, the place of the detention, and the degree to which the subject's freedom of movement was restricted). "Investigatory detention is permissible when there is a reasonable and articulable suspicion that the law is being or has been broken." *Jason L.*, 2000-NMSC-018, ¶ 20 (internal quotation marks and citation omitted). "A reasonable suspicion is a particularized suspicion, based on all

the circumstances[,] that a particular individual, the one detained, is breaking, or has broken, the law." *Id.*

In this case, Defendant was detained in connection with the investigation of apparent drug-dealing activity. As previously described, Officer Shelden had been observing another individual in a nearby motel room. Using binoculars and looking through the open door, he saw what appeared to be plastic baggies placed in rows on a table, and the individual in question counting cash. Officer Shelden then saw the individual engage in what appeared to be a drug transaction. Shortly thereafter, this individual knocked on the door to Defendant's room and entered. After a very brief stay in Defendant's room, the individual exited and walked back to his own room.

The State contends that the foregoing facts and circumstances gave rise to reasonable suspicion to believe that Defendant was involved in criminal activity, such that the detention was permissible. However, Defendant was not involved in any of the suspicious behavior that Officer Shelden observed. He was never present in the room in which drugs were arrayed on a table and money was being counted. He did not participate in the apparent drug transaction in the parking lot. Defendant merely interacted briefly with the individual being watched. This evidence is insufficient to establish a reasonable suspicion that Defendant was engaged in criminal activity. *See, e.g.*, *State v. Neal*, 2007-NMSC-043, ¶ 30, 142 N.M. 176, 164 P.3d 57 ("[The

7

d]efendant's mere association with [an individual], who was under surveillance in an ongoing drug investigation, was insufficient to create reasonable suspicion of [the d]efendant[.]"); *State v. Rivas*, 2007-NMCA-020, ¶¶ 9-10, 15, 141 N.M. 87, 150 P.3d 1037 (holding that the defendant's association with the driver of the vehicle who was being investigated for a drug offense did not support a reasonable suspicion that the defendant was involved in any specific crime); *see generally State v. Aguilar*, 2007-NMCA-040, ¶ 9, 141 N.M. 364, 155 P.3d 769 ("A reasonable suspicion must be a particularized suspicion, based on all the circumstances, that *the specific individual detained* has broken or is breaking the law." (emphasis added)); *Patterson,* 2006-NMCA-037, ¶ 24 ("[A] finding of individualized suspicion requires the articulation of the suspicion in a manner that is particularized with regard to the individual who is stopped."). Accordingly, Defendant was detained without individualized reasonable suspicion that he had committed or was about to commit a crime, in violation of the Fourth Amendment.

We understand the State to suggest that Defendant's detention should be deemed constitutionally permissible because the detention addressed generalized concerns about officer safety and preservation of evidence. However, such considerations do not obviate the need for individualized suspicion. *See Rivas*, 2007-NMCA-020, ¶¶ 11-13 (rejecting an argument that an individual was properly detained

8

despite the absence of individualized reasonable suspicion based on safety concerns arising from an associate's apparent possession of drugs); *cf. State v. Ortega*, 117 N.M. 160, 162, 870 P.2d 122, 124 (1994) (stating that the mere potential for destruction of evidence does not give rise to an exigency)**.**

**WARRANTLESS ENTRY INTO THE MOTEL ROOM**

Finally, we must determine whether the entry into Defendant's motel room should be deemed permissible despite the improper investigatory detention. Generally speaking, law enforcement officers are not permitted to enter residences without a warrant. *State v. Gutierrez*, 2008-NMCA-018, ¶ 16, 143 N.M. 422, 176 P.3d 1154; *State v. Monteleone*, 2005-NMCA-129, ¶ 9, 138 N.M. 544, 123 P.3d 777. The same general rule applies to motel rooms. *See State v. Pool*, 98 N.M. 704, 706, 652 P.2d 254, 256 (Ct. App. 1982) ("[T]he same principles applicable to the authority of police to enter a private home are applicable to entry to hotel rooms[.]"). As an exception to this general rule, an officer may enter a residence or room if consent is given. *See Gutierrez*, 2008-NMCA-018, ¶ 19.

As described in the preceding subsections, Officer Padilla entered Defendant's motel room only after Defendant asked him to retrieve his shoes. The State contends that insofar as Defendant consented to the entry in this fashion, no Fourth Amendment violation occurred. We apply de novo review. *Monteleone*, 2005-NMCA-129, ¶ 17.

9

The applicable analytical framework has been described as follows:

> In order for evidence obtained after an illegality, but with the voluntary consent of the defendant, to be admissible, there must be a break in the causal chain from the illegality to the search. The proper question in evaluating whether a consent was tainted by prior illegality is whether there was sufficient attenuation between the illegality and the consent to search. In deciding whether the consent is sufficiently attenuated from the Fourth Amendment violation, we consider the temporal proximity of the illegal act and the consent, the presence or absence of intervening circumstances, and the purpose and flagrancy of the official misconduct.

*State v. Taylor*, 1999-NMCA-022, ¶ 28, 126 N.M. 569, 973 P.2d 246 (alterations, internal quotation marks, and citations omitted).

In this case, the transcript clearly reflects that Defendant authorized Officer Padilla to enter his motel room only because Officer Padilla improperly detained Defendant by refusing to allow him to terminate the encounter or to return to the room himself to retrieve his shoes. Accordingly, the consent flowed directly from the illegal detention. Moreover, it appears that Officer Padilla received Defendant's consent to enter the motel room almost immediately after impermissibly detaining him, and we see nothing to suggest that there were any intervening circumstances. We therefore conclude that Defendant's consent was not attenuated from the illegal detention. *See, e.g.*, *Rivas*, 2007-NMCA-020, ¶¶ 17-18 (arriving at a similar conclusion where consent followed immediately after illegal detention, and where there were no intervening circumstances); *Monteleone*, 2005-NMCA-129, ¶¶ 18-19 (holding that

10

where consent was obtained almost immediately after illegal entry into a room, where there were no intervening circumstances between the officers' illegal conduct and receipt of consent, and where the officers exploited the illegality by obtaining consent after placing the defendant in a vulnerable position, the consent was tainted); *State v. Prince*, 2004-NMCA-127, ¶ 21, 136 N.M. 521, 101 P.3d 332 (holding there was no break in the causal chain between an improper investigatory detention and obtained consent and, therefore, the consent was tainted).  Insofar as Defendant's consent was tainted, all evidence obtained following the entry into the motel was fruit of the poisonous tree**,** and should have been suppressed. *See Monteleone*, 2005-NMCA-129, ¶¶ 16-17, 21 (discussing the fruit of the poisonous tree doctrine, and concluding that where consent is not purged of the taint by a break in the causal chain, evidence subsequently discovered must be suppressed).

**CONCLUSION**

For the foregoing reasons, we reverse and remand.

**IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

11

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**RODERICK T. KENNEDY, Judge**