**Certiorari Denied, June 28, 2011, Docket No. 33,044**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-079**

**Filing Date:  April 1, 2011**

**Docket No. 29,564**

**STATE OF NEW MEXICO,**

        **Plaintiff-Appellee,**

**v.**

**ARTURO PORTILLO,**

        **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Judge**

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Works L.L.C.
John A. McCall
Albuquerque, NM

for Appellant

**OPINION**

**FRY, Judge.**

**{1}**      Defendant challenges the denial of his motion to suppress.  We conclude that Defendant, a passenger in a vehicle subjected to a valid traffic stop, was illegally detained when the stop was extended by the officer's questions, which were unrelated to the reason for the stop and unsupported by independent reasonable suspicion.  Because the evidence

1

sought to be suppressed was the fruit of that illegal detention, we reverse the district court's order denying suppression.

**STANDARD OF REVIEW**

**{2}**    "In reviewing a trial court's denial of a motion to suppress, we observe the distinction between factual determinations which are subject to a substantial evidence standard of review and application of law to the facts[,] which is subject to de novo review." *State v. Nieto*, 2000-NMSC-031, ¶ 19, 129 N.M. 688, 12 P.3d 442 (alteration in original) (internal quotation marks and citation omitted). "We view the facts in the manner most favorable to the prevailing party and defer to the district court's findings of fact if substantial evidence exists to support those findings." *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964.

**{3}**    For the factual background in this case, we rely primarily on the district court's formal findings of fact that are undisputed by the parties. We supplement these findings with additional information upon which the record is unequivocal and the parties are in agreement.

**BACKGROUND**

**{4}**    Officer Dean Thatcher was the only witness at the hearing on the motion to suppress. He testified that he initiated a routine traffic stop for a speeding violation on July 19, 2008. Defendant was a passenger in the vehicle. Officer Thatcher asked the driver for his license, proof of insurance, and registration. As the driver searched for these documents, Defendant remained looking straight ahead with his hands in his lap, avoiding eye contact with Officer Thatcher and only glancing furtively at him once when Officer Thatcher moved. Officer Thatcher found this behavior to be abnormal, and it caused him to suspect that there were narcotics or weapons in the vehicle. Therefore, when Officer Roy Askin arrived on the scene, Officer Thatcher asked him to watch Defendant.

**{5}**    Officer Thatcher asked the driver to step out of the vehicle and issued a citation to him. Officer Thatcher then returned the documents to the driver and told him that he was free to leave. However, as the driver was walking back toward his vehicle, Officer Thatcher asked whether he had any illegal narcotics or weapons in the vehicle. The driver indicated that there were none. Officer Thatcher requested and obtained the driver's consent to search the vehicle.

**{6}**    Officer Thatcher then approached Defendant and asked him whether there were any weapons or narcotics in the vehicle and whether the vehicle contained any of Defendant's personal property. Defendant responded in the negative and, upon the officer's request, Defendant also consented to a search of the vehicle. After Defendant exited the vehicle, Officer Thatcher asked Officer Askin to continue to watch Defendant.

2

**{7}** In the course of the ensuing search of the vehicle, Officer Thatcher discovered illegal narcotics. Defendant admitted ownership. He was arrested and later charged with possession of a controlled substance.

**{8}** Defendant moved to suppress on the ground that he had been impermissibly detained in the course of the traffic stop and further argued that the scope of the investigatory detention had been improperly expanded to include drug-related questioning without reasonable suspicion. Based on these alleged illegalities, Defendant contended that the evidence obtained in the course of the search of the vehicle, as well as all other evidentiary fruits of the search, should be suppressed. The district court denied the motion. Defendant entered a plea agreement, in which he reserved the right to challenge the district court's ruling on the motion. This appeal followed.

## DISCUSSION

### Standing

**{9}** Because this case involves the search of a vehicle in which Defendant was a passenger, standing is presented as a threshold question. *See generally State v. Van Dang*, 2005-NMSC-033, ¶ 7, 138 N.M. 408, 120 P.3d 830 (characterizing standing as a threshold issue). The district court concluded that Defendant had "standing to file his [m]otion to [s]uppress," but did not elaborate. An overview of the applicable principles of law is helpful.

**{10}** Generally speaking, passengers lack a reasonable expectation of privacy in vehicles or their contents and, as a consequence, passengers typically lack standing to challenge automobile searches. *See, e.g., State v. Waggoner*, 97 N.M. 73, 75, 636 P.2d 892, 894 (Ct. App. 1981) (holding that passengers lacked any reasonable expectation of privacy and therefore had no standing to challenge the search of the vehicle). A showing of special circumstances, such as status as a regular permissive user who exerts control over the vehicle and its contents, may support a different result in an appropriate case. *See Van Dang*, 2005-NMSC-033, ¶¶ 8-10 (discussing circumstances in which a non-owner may have standing to challenge a vehicle search). In this case, however, no such showing was made. We therefore conclude that Defendant lacked standing to directly challenge the search of the vehicle.

**{11}** Although an individual may lack standing to directly challenge a search of a vehicle, he or she may nevertheless contest the lawfulness of his or her own detention and seek to suppress evidence found as a result of that detention. *See id.* ¶¶ 12-13 (observing in a case where the defendant lacked standing to challenge the search of a vehicle that he nevertheless had standing to challenge the constitutionality of his own detention); *State v. Creech*, 111 N.M. 490, 492, 806 P.2d 1080, 1082 (Ct. App. 1991) (observing that while a passenger may lack a privacy interest sufficient to establish standing to challenge a vehicle search, a passenger nevertheless has standing to challenge the validity of the stop). Accordingly, to

the extent that Defendant was illegally detained, Defendant has standing to seek the suppression of any evidence obtained as a result of that detention. *See State v. Sewell*, 2009-NMSC-033, ¶ 16, 146 N.M. 428, 211 P.3d 885 (observing that a defendant has standing to object to a seizure "which occurred as a result of the exploitation of [the d]efendant's own unlawful . . . detention" (omission in original) (internal quotation marks and citation omitted)). In light of the foregoing principles, we must first ascertain whether Defendant was illegally detained.

**Illegal Detention**

**{12}** It is well established that the initiation of a traffic stop constitutes a seizure of the vehicle's occupants. *State v. Leyva*, 2011-NMSC-009, ¶ 10, ___ N.M. ___, 250 P.3d 861 (explaining that "[a] law enforcement officer who stops a vehicle to investigate a traffic violation seizes the occupants"). Accordingly, Defendant was clearly seized when Officer Thatcher stopped the vehicle in which he was traveling as a passenger, and he would have standing to challenge that stop. *See Creech*, 111 N.M. at 492, 806 P.2d at 1082. However, Defendant does not take issue with the validity of the stop itself.

**{13}** Defendant contends that the stop ripened into an unlawful investigatory detention when Officer Thatcher improperly expanded the scope of inquiry beyond the circumstances that justified the initial stop. More specifically, he asserts that once Officer Thatcher completed his investigation relative to the speeding violation and issued the citation, the stop should have concluded. Defendant argues that the officer's inquiry about the presence of narcotics and weapons in the vehicle without reasonable suspicion for doing so impermissibly continued the detention. *See generally State v. Funderburg*, 2008-NMSC-026, ¶ 14, 144 N.M. 37, 183 P.3d 922 ("An officer's continued detention of an individual, while lawful at the outset, may become unlawful if the officer unjustifiably expands the scope of the detention or, without a valid factual basis, makes inquiries about other criminal activity unrelated to the traffic violation.").

**{14}** Defendant contends that the impermissible questioning directly implicated his own constitutional rights because he was detained himself while the officer engaged in the narcotics- and weapons-related inquiry. The State takes a different position. While acknowledging that Defendant was effectively seized when the traffic stop was initiated, the State contends that his detention was concluded when the vehicle came to a stop, at which point Defendant was free to leave.

**{15}** We appear to lack authority addressing the specific situation presented in this case. Although a series of cases have established that a passenger is detained if an officer requests his or her identification, no such request was made of Defendant in this case. *See, e.g., City of Roswell v. Hudson*, 2007-NMCA-034, ¶¶ 13-14, 141 N.M. 261, 154 P.3d 76; *State v. Patterson*, 2006-NMCA-037, ¶ 21, 139 N.M. 322, 131 P.3d 1286; *State v. Affsprung*, 2004-NMCA-038, ¶ 18, 135 N.M. 306, 87 P.3d 1088. We must therefore apply more general principles.

4

**{16}** "A seizure takes place when the officer detains the individual in such a way that a reasonable person would not feel free to leave, given the totality of the circumstances." *Patterson*, 2006-NMCA-037, ¶ 18. "[I]n determining whether a passenger in a detained vehicle would feel free to leave . . . three factors are to be considered: (1) the conduct of the police, (2) the person of the individual citizen, and (3) the physical surroundings of the encounter." *Id.* ¶ 20 (internal quotation marks and citation omitted).

**{17}** In this case, the encounter began with a display of authority sufficient to effectuate the traffic stop. Soon afterward, a second officer arrived on the scene as well. This officer was specifically requested to watch Defendant. Although the district court's findings do not specifically address the matter, the uncontroverted testimony of Officer Thatcher indicates that Defendant was also individually questioned about the presence of narcotics and weapons in the vehicle. *Cf. State v. Figueroa*, 2010-NMCA-048, ¶¶ 2, 20, 148 N.M. 811, 242 P.3d 378 (relying on uncontroverted testimony of the officer to establish circumstances surrounding an encounter where the officer was the sole witness at a suppression hearing), *cert. granted*, 2010-NMCERT-006, 148 N.M. 584, 241 P.3d 182. Finally, there was no evidence suggesting that Defendant was ever informed that he was free to terminate the encounter or to refuse to answer questions. We conclude that under such circumstances, a reasonable person would not feel free to leave. The fact that Defendant was initially seized with a show of authority and kept under constant scrutiny by two officers throughout the remainder of the traffic stop, together with the fact that Defendant was subjected to questioning about narcotics and weapons himself, is consistent with a continuous detention. *See, e.g., State v. Jason L.*, 2000-NMSC-018, ¶¶ 17-18, 129 N.M. 119, 2 P.3d 856 (observing that circumstances such as a threatening presence of several officers, accusatory or intrusive questioning of individuals, and failure to inform the individuals that they were free to leave or not required to answer questions, are all factors that could lead a reasonable person to believe he or she is not free to terminate an encounter with the police).

**{18}** Because Defendant remained subject to continuous detention, the question becomes whether his detention was supported by reasonable suspicion. *See generally Funderburg*, 2008-NMSC-026, ¶ 24 (observing that questions about drugs and weapons are a distinct line of inquiry and "must be supported by a showing of reasonable suspicion of criminal activity other than that which gave rise to the initial traffic stop" (internal quotation marks and citation omitted)); *State v. Prince*, 2004-NMCA-127, ¶ 9, 136 N.M. 521, 101 P.3d 332 (observing that "continued investigation beyond the scope of the initial traffic stop is justified only if the officer can articulate specific and particularized factors that give rise to an objectively reasonable suspicion that other criminal activity has been or may be afoot"). It is at this point that analysis under the Fourth Amendment to the United States Constitution diverges from an analysis under Article II, Section 10 of the New Mexico Constitution.

**{19}** Our Supreme Court recently filed its opinion in *Leyva*, in which the Court clarified that an officer's actions following a valid traffic stop will be scrutinized differently under the Federal Constitution than under the State Constitution. *Leyva*, 2011-NMSC-009, ¶¶ 21, 55. Under the Fourth Amendment, if an officer has made a valid traffic stop, "[a]n officer's

subsequent actions are not reasonably related in scope to the circumstances that caused him to stop the vehicle if he detains its occupants beyond the time needed to investigate the circumstances that caused the stop, unless he develops reasonable suspicion of additional criminal activity in the meantime." *Leyva*, 2011-NMSC-009, ¶ 19 (alteration in original) (internal quotation marks and citation omitted). Thus, "[w]hether an officer's questioning measurably extends the length of a traffic stop remains the proper analysis under the Fourth Amendment." *Id.* ¶ 21.

**{20}** However, the analysis is different under Article II, Section 10 of the New Mexico Constitution. According to the *Leyva* Court, that provision requires "a reasonable justification for the initial stop and that all questions asked during the stop be reasonably related to the reason for the stop or otherwise supported by reasonable suspicion." 2011-NMSC-009, ¶ 55. "Unrelated questions are permissible when supported by independent reasonable suspicion, for reasons of officer safety, or if the interaction has developed into a consensual encounter." *Id.*

**{21}** It appears that Officer Thatcher's questioning about narcotics and weapons would pass muster under Fourth Amendment analysis. Those few questions, while unrelated to the reason for the initial stop, did not appreciably extend the length of the traffic stop as a whole. *See Leyva*, 2011-NMSC-009, ¶ 18 (observing that under Fourth Amendment analysis, "[t]he questions posed during a traffic stop no longer need to be reasonably related to the initial justification of the stop" as long as the length of the stop is not extended beyond "the time required to conduct a reasonable investigation into the initial justification for the stop").

**{22}** While there appears to be no Fourth Amendment violation under these circumstances, it is clear that Defendant preserved his claim that the extension of the initial traffic stop violated Article II, Section 10 of the State Constitution. The Court in *Leyva* clarified what is required to preserve a claim under the State Constitution and stated that "[w]here a state constitutional *provision* has previously been interpreted more expansively than its federal counterpart, trial counsel must develop the necessary factual base and raise the applicable constitutional provision in trial court." *Leyva*, 2011-NMSC-009, ¶ 49. "[A] plethora of precedent already interprets Article II, Section 10 more expansively than the Fourth Amendment," so Defendant was required only to raise that state provision below and develop a factual record in support of his argument. *Leyva*, 2011-NMSC-009, ¶ 50 (internal quotation marks and citation omitted). Defendant did both, and we therefore turn to an analysis of Defendant's state constitutional argument.

**{23}** Under our State Constitution, Officer Thatcher could ask questions about narcotics and weapons only if he had developed independent, reasonable suspicion giving rise to such questions. *See Funderburg*, 2008-NMSC-026, ¶ 24. The only basis for suspicion of criminal activity that the State articulated in the district court involved Defendant's demeanor when Officer Thatcher approached the vehicle and requested the driver's documentation. Officer Thatcher testified that Defendant's posture, with his hands in his lap while looking straight ahead and failing to make eye contact apart from a single furtive

glance, was abnormal and caused him to suspect that there were narcotics or weapons in the vehicle. We conclude that this behavior, standing alone and in the absence of any other suspicious circumstances, was insufficient to give rise to a reasonable suspicion of criminal activity. *See, e.g.*, *State v. Vandenberg*, 2003-NMSC-030, ¶ 44, 134 N.M. 566, 81 P.3d 19 (observing that a nervous demeanor and failure to make eye contact did not give rise to reasonable suspicion about the possession of drugs or other criminal activity sufficient to support further detention of the occupants of a vehicle); *State v. Gutierrez*, 2008-NMCA-015, ¶ 21, 143 N.M. 522, 177 P.3d 1096 (holding that a nervous and possibly furtive demeanor was insufficient to give rise to reasonable suspicion to detain); *Patterson*, 2006-NMCA-037, ¶¶ 9, 29 (holding that nervous behavior and failure to make eye contact did not give rise to reasonable, individualized suspicion).

**{24}** To summarize, Defendant was detained at the inception of the traffic stop, and he remained subject to continuing detention thereafter. Although the stop was originally justified, the ensuing expansion of the inquiry into weapons and narcotics was unsupported by reasonable suspicion. We therefore conclude that Defendant was subjected to an illegal detention.

**Exploitation of the Illegality**

**{25}** It is established law that evidence discovered as a result of the exploitation of an illegal seizure must be suppressed unless it has been purged of its primary taint. *See State v. Garcia*, 2009-NMSC-046, ¶¶ 14, 23, 147 N.M. 134, 217 P.3d 1032 (reciting the fruit of the poisonous tree doctrine set forth in *Wong Sun v. United States*, 371 U.S. 471 (1963)). We therefore turn to the question of whether the evidence discovered in the vehicle in this case was found as a result of the exploitation of Defendant's illegal detention.

**{26}** As stated earlier, we are unaware of any New Mexico authority addressing the precise circumstances in this case. However, in this Court's opinion in *State v. Van Dang*, 2004-NMCA-067, ¶ 16, 135 N.M. 719, 93 P.3d 1, *rev'd on other grounds by Van Dang*, 2005-NMSC-033, we cited the case of *United States v. DeLuca*, 269 F.3d 1128 (10th Cir. 2001), a case in which the circumstances were strikingly similar.

**{27}** In *DeLuca*, a New Mexico police officer stopped a vehicle in which the defendant was a passenger. *Id.* at 1130. Upon the officer's request, the driver and owner of the vehicle produced valid documentation. *Id.* Observing that the occupants of the vehicle appeared to be nervous, the officer inquired about their travel plans. *Id.* Meanwhile, a second officer arrived on the scene. *Id.* Permission to search the trunk of the vehicle was requested, and the driver consented. *Id.* Narcotics were subsequently found, and all of the occupants of the vehicle were arrested for possession. *Id.* at 1131. The defendant subsequently moved to suppress the narcotics found in the course of the search. *Id.*

**{28}** On appeal, the *DeLuca* majority opinion noted that as a passenger, the defendant lacked standing to directly challenge the search of the vehicle. *Id.* at 1132. Nevertheless,

7

the defendant had standing to contest the lawfulness of his own detention and could seek to suppress evidence found in the vehicle as the fruit of his illegal detention. *Id.* Because the government conceded that the defendant's continued detention had been unlawful, the only issue on appeal was whether the narcotics found in the vehicle were the fruit of the defendant's illegal detention. *Id.* This was held to depend upon a showing of "a factual nexus between his unlawful detention and the discovery" of the narcotics. *Id.* In order to make such a showing, the *DeLuca* court held that it was incumbent upon the defendant to adduce evidence demonstrating that the narcotics "would never have been found but for *his*, and only his, unlawful detention." *Id.* at 1133. In satisfaction of this requirement, the court suggested that the defendant was required to demonstrate that "had he requested to leave the scene of the traffic stop, he would have been able to do so" in the vehicle. *Id.* Without such evidence, the *DeLuca* court majority opinion held that "we must assume that regardless of [the defendant's] presence, the car and its owner would have continued to be detained and the officer would still have found the methamphetamine." *Id.* Because the defendant failed to present any evidence to rebut that presumption, the *DeLuca* court ultimately held that the narcotics were not the fruit of the defendant's illegal detention. *Id.* at 1133-34.

**{29}** Judge Seymour dissented from the *DeLuca* majority opinion on several grounds and began her analysis by noting that "in vehicle stop cases[,] . . . once the occupants of the vehicle have established that their detention, arrest or stop was illegal, as a general rule any evidence obtained as a result of their detention must be excluded as fruit of the poisonous tree." *Id.* at 1137 (Seymour, J., dissenting) (internal quotation marks and citation omitted). The dissent observed that the majority opinion relied on a flawed analysis in *United States v. Nava-Ramirez*, 210 F.3d 1128 (10th Cir. 2000), which imposed a "heightened factual nexus test" that was contrary to precedent. *DeLuca*, 269 F.3d at 1142, 1144 (Seymour, J., dissenting) (internal quotation marks omitted). According to the dissent, precedent requires no such heightened nexus and "has simply assumed . . . that the factual nexus between the illegal conduct and discovery of evidence in the car in such cases is crystal clear given the proximity in time and in location of the events, and the unbroken links between them." *Id.* at 1144 (Seymour, J., dissenting).

**{30}** Judge Seymour further noted that, unlike the *DeLuca* majority opinion and *Nava-Ramirez*, established precedent does not distinguish between a driver and a passenger when determining whether the evidence is the fruit of the illegality. *DeLuca*, 269 F.3d at 1145 (Seymour, J., dissenting). Instead, "once the issue of standing has been resolved we have conducted the fruits analysis in the exact same manner with respect to each type of occupant," whether driver or passenger. *Id.*

**{31}** Finally, Judge Seymour noted that *Nava-Ramirez* erroneously required a non-owner driver to "attempt to remove the car from the scene in order to stop it from being illegally searched before he is entitled to have evidence discovered in the trunk suppressed." *DeLuca*, 269 F.3d at 1146-47 (Seymour, J., dissenting). In reliance on this flawed proposition in *Nava-Ramirez*, the majority in *DeLuca* held that the passenger defendant had to establish that he asked the detaining police officers if he could leave the scene of the traffic stop in the

8

driver's car before he could challenge the discovery of the evidence. 269 F.3d at 1133. The dissent observed that this proposition is tantamount to saying that "because the *illegal* search would have happened anyway, the evidence is admissible," and such a notion is contrary to precedent. *Id.* at 1147 (Seymour, J., dissenting). Judge Seymour further noted that "[u]nder the heightened *Nava-Ramirez* fruits analysis, . . . while a non-owner driver and a passenger may theoretically challenge their illegal detention, they will have no remedy because they will be unable to satisfy the implausible *Nava-Ramirez* requirement that they prove they tried to leave with the vehicle prior to the illegal search." *DeLuca*, 269 F.3d at 1148 (Seymour, J., dissenting).

{32}    We believe Judge Seymour's dissent provides the better view of this issue, and a leading treatise agrees, stating:

> It is unquestionably true, just as the dissent [in *DeLuca*] concludes, that the *DeLuca* [majority's] approach undermines the rationale for the exclusionary rule; indeed, *DeLuca* provides positive encouragement for Fourth Amendment violations by telling the police that there are potential law enforcement benefits to be derived, at least against the passengers, in extending lawful stops even when, as in *DeLuca*, such action is flagrantly illegal.

6 Wayne R. LaFave, *Search And Seizure: A Treatise On The Fourth Amendment* § 11.4 (4th ed. 2010) (internal quotation marks omitted) . Given the more expansive interpretation our courts have given Article II, Section 10 of the State Constitution, we conclude in the present case that the illegal detention of Defendant resulted in the discovery of the evidence in the car. That discovery was fruit of the poisonous tree, and it was subject to suppression unless the State demonstrated that the evidence was purged of its taint. *See DeLuca*, 269 F.3d at 1137-38 (Seymour, J., dissenting).

{33}    We understand the State to suggest that Defendant's consent to the search rendered any preceding illegality immaterial. "In order for evidence obtained after an illegality, but with the voluntary consent of the defendant, to be admissible, there must be a break in the causal chain from the illegality to the search." *State v. Taylor*, 1999-NMCA-022, ¶ 28, 126 N.M. 569, 973 P.2d 246 (alterations omitted) (internal quotation marks and citation omitted). "In deciding whether the consent is sufficiently attenuated from the . . . violation, we consider the temporal proximity of the illegal act and the consent, the presence or absence of intervening circumstances, and the purpose and flagrancy of the official misconduct." *Id.* In this case, there was no attenuation whatsoever between the improper questioning and the request for consent. Officer Thatcher asked the improper questions immediately before seeking consent to search, and no other events occurred to separate the consent and the questions. Moreover, the purpose of requesting consent to search was clearly to verify the answers to the improper questions, thereby continuing an investigation that was beyond the scope of reasonable suspicion. Under such circumstances, we conclude that Defendant's

9

consent was not sufficiently attenuated from the illegality to remove its taint.  *See id.* ¶ 29 (arriving at a similar conclusion under analogous circumstances).

**{34}**    To the extent the State suggests that the driver's consent overrode the illegality of the detention, we are not persuaded.  Both the driver and Defendant were illegally detained by way of Officer Thatcher's improper questioning, and the evidence was discovered as a result of that detention.  The driver's consent did not purge the taint of that primary illegality.

**CONCLUSION**

**{35}**    For the foregoing reasons, we reverse the district court's denial of Defendant's motion to suppress.

**{36}    IT IS SO ORDERED.**


_____
**CYNTHIA A. FRY, Judge**


**WE CONCUR:**


_____
**MICHAEL D. BUSTAMANTE, Judge**


_____
**JONATHAN B. SUTIN, Judge**


**Topic Index for *State v. Portillo*, Docket No. 29,564**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-FA | Fourth Amendment |
| CT-NM | New Mexico Constitution, General |
| CT-SD | Standing |
| CT-SU | Suppression of Evidence |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-CL | Controlled Substances |
| CL-MH | Motor Vehicle Violations |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-DN | Detention or Custody |

| | |
|---|---|
| CA-MR | Motion to Suppress |
| CA-RS | Reasonable Suspicion |
| CA-SZ | Search and Seizure |
| CA-SG | Standing |
| CA-WS | Warrantless Search |
| | |
| **EV** | **EVIDENCE** |
| EV-SU | Suppression of Evidence |