This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                              **NO. 30,580**

**EDDIE MARTINEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Thomas A. Rutledge, District Judge**

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

Defendant, Eddie Martinez, was convicted pursuant to a conditional plea for possession of controlled substances, possession of drug paraphernalia, and possession of less than one ounce of marijuana. He reserved his right to appeal the district court's denial of his motion to suppress (1) physical evidence obtained in violation of his right to be free from unreasonable searches and seizures, and (2) incriminating statements he made to law enforcement officers while he and the vehicle in which he was a passenger were detained at the secondary area of a sobriety checkpoint. On appeal, Defendant contends that the evidence against him was illegally obtained because law enforcement officers impermissibly extended his detention without reasonable suspicion and questioned him without advising him of his right against self-incrimination. We conclude that during the course of a valid traffic stop of the vehicle in which Defendant was a passenger, law enforcement officers developed reasonable suspicion to lawfully extend the detention of Defendant for investigative purposes and that Defendant was not in custody when he made statements to the law enforcement officers. We affirm.

**BACKGROUND**

For the background of this case, we rely on the factual findings of the district court and supplement those findings with undisputed evidence from the record. That evidence includes the testimony of the four law enforcement officers who were the

only witnesses to testify at the evidentiary hearing on Defendant's motion to suppress and who participated in the detention that Defendant now challenges.

At about 10:40 p.m. on May 5, 2009, a truck driven by Maxy Allen approached a sobriety checkpoint between Artesia and Carlsbad. Allen had two male passengers in the truck, her husband or significant other, Paul Tidwell, and Defendant. At the checkpoint, Deputy Ron LeBoeuf made contact with Allen and requested her license, proof of insurance, and registration. Allen provided her driver's license, and Deputy LeBoeuf testified that at that time, he noticed a New Mexico temporary registration sticker in the window behind the driver that appeared to have been altered.

Based upon what appeared to be an altered sticker, Deputy LeBoeuf had Allen pull the vehicle into the paved secondary area of the checkpoint on the side of the highway where he again made contact with Allen. Deputy LeBoeuf asked Allen to step out of the vehicle and observed that she was fidgety and seemed very nervous. Her hands were shaking, and she was talking fast. Deputy LeBoeuf testified that because of Allen's actions and the altered temporary sticker, he thought the truck might have been stolen. Deputy LeBoeuf asked Allen who owned the vehicle, and Allen said it belonged to her brother-in-law. Allen had no explanation about the altered temporary sticker and told Deputy LeBoeuf she did not know it had been altered.

Deputy LeBoeuf asked Allen to stay at the back of the truck and then went to the cab to talk with Tidwell. Tidwell was seated in the center front seat, and Defendant was seated to his right against the passenger door. Deputy LeBoeuf asked Tidwell who owned the truck, and Tidwell responded that his brother owned it. Deputy LeBoeuf observed that Tidwell had droopy eyes, seemed to be sleepy, and seemed to be under the influence of a depressant such as heroin. Deputy LeBoeuf asked Tidwell, "When was the last time you used [drugs]?" Tidwell responded that he had used drugs a week and a half ago. The district court found Tidwell's statement was inconsistent with what Deputy LeBoeuf testified he had been observing.

Deputy LeBoeuf also asked Tidwell where they were coming from and what they were doing, and Tidwell responded that they had gone to Artesia to pick up Defendant. Deputy LeBoeuf then returned to speak to Allen and asked her where they were coming from and what they had been doing. She said they had taken Defendant to Roswell to meet with his girlfriend.

The district court found that at that point Deputy LeBoeuf's initial investigation into the altered vehicle registration changed and that, as a result, Deputy LeBoeuf asked Tidwell and Defendant to exit the truck to investigate further. Specifically, the district court found that Deputy LeBoeuf had information to suspect drug use and that

4

his observations and contradictory statements from Allen and Tidwell led to that reasonable conclusion.

Deputy LeBoeuf asked Tidwell to step to the front of the truck to talk to him more and requested that Deputy Jones remove Defendant from the truck. Deputy Jones testified that once Defendant got out of the truck, Defendant kept putting his hands in and out of his pockets and was acting very "skittish." Deputy Jones asked Defendant to keep his hands out of his pockets because it created an officer safety issue. The district court agreed and found that Defendant's behavior created an officer safety issue. In response to Defendant's actions, Deputy Jones placed Defendant in handcuffs and began to pat him down to determine if he had weapons. Deputy Wall came over, completed the pat down, and located what appeared to be a knife in the pocket of Defendant's shorts. Deputy Wall asked Defendant if it was a knife, and Defendant said that it was. Deputy Wall removed the knife and stuck to it was a bag containing a green leafy substance that Deputy Wall believed to be marijuana. He then continued the pat down and located what he believed to be two marijuana joints in Defendant's socks. Deputy Wall informed Defendant that he was going to issue him a citation for possession of a small amount of marijuana, wrote the citation, unhandcuffed Defendant, and told him to go over and stand to the side while other officers continued to investigate.

Deputy LeBoeuf testified that, at this point—based on his observation that Tidwell appeared to be under the influence, the information that Defendant had marijuana in his possession, the contradictory statements, and the presence of two backpacks on the floor of the truck—he decided to call for the canine unit from Carlsbad. Deputy LeBoeuf testified that he believed the backpacks, which he described as the kind that kids normally bring to school or you would bring on a day trip, looked full and were inconsistent with the travel plans reported by Allen and Tidwell. According to Deputy LeBoeuf, at the time he decided to call for the canine unit, the truck and its occupants had been stopped for approximately five minutes. He testified that the canine unit arrived about fifteen to twenty minutes later.

When Corporal David Whitzel and his canine partner arrived, Corporal Whitzel provided Deputy LeBoeuf with a consent to search form. Deputy LeBoeuf approached Allen with the form, and she gave consent to search the vehicle. Corporal Whitzel and his canine then searched the vehicle. In the course of the search, the dog aggressively alerted by scratching and biting at a red backpack. Deputy Jones removed the backpack and took it to the tailgate of the pick-up truck. One of the officers asked whose backpack it was, and Defendant said it was his and that it contained dirty needles.

Defendant was not in handcuffs at the time his backpack was searched, and he made no efforts to leave. The officers searched the backpack and found what appeared to be illegal drugs and paraphernalia. Defendant identified the items. Defendant did not challenge the actual search of the bag. The district court found that during the course of the search, Defendant was not in custody because Defendant was no longer in handcuffs, and he had already been issued a non-traffic citation. Defendant was arrested and ultimately charged with possession of controlled substances, possession of drug paraphernalia, and possession of less than one ounce of marijuana.

After the search of Defendant's backpack was complete, Deputy LeBoeuf took the registration sticker out, examined it, ran the vehicle identification number, and learned the vehicle was not listed as stolen. Allen and Tidwell were released with the vehicle. Deputy LeBoeuf testified that the entire stop took approximately forty-five minutes.

Defendant moved to suppress on two grounds: (1) that his detention and questioning by law enforcement officers exceeded the permissible scope of the inquiry into the initial stop under both federal and state law; and, (2) that his statements to the officers were obtained in violation of his right against self-incrimination. After an evidentiary hearing, the district court denied the motion and concluded that the initial

stop was valid and that in the course of the stop, the officer observed and received information that led to pursuing other matters such as drug possession. Defendant was subsequently convicted pursuant to a conditional guilty plea and reserved his right to appeal the denial of his motion to suppress. He was sentenced and incarcerated. The district court entered a judgment and order and set bond pending appeal. This appeal timely followed.

**DISCUSSION**

**Defendant Was Not Illegally Detained**

Defendant first argues that his prolonged detention at the secondary area of the sobriety checkpoint exceeded the permissible scope of inquiry for an altered temporary registration sticker and that, therefore, the fruits of the detention and subsequent search of him and the backpack must be suppressed. Defendant does not challenge the validity of the checkpoint, the legality of the initial stop, or Deputy LeBoeuf's direction of the truck into the secondary area. Accordingly, we understand Defendant's argument to be that the detention was impermissibly expanded at the secondary area of the checkpoint when Tidwell was questioned about drug use and then both Tidwell and Defendant were ordered out of the truck for further questioning. Defendant contends that Deputy LeBoeuf should have continued to pursue the steps necessary to investigate the altered temporary sticker and to gather the necessary

8

information to confirm or dispel his suspicion that the truck may have been stolen. Defendant asserts that by questioning Allen and Tidwell about their travel plans and asking Tidwell about his drug use, Deputy LeBoeuf abandoned his investigation into the altered temporary sticker and immediately "launch[ed] a drug trafficking investigation." Defendant contends that these interactions impermissibly expanded the lawful detention of the vehicle and its passengers, leading to his removal from the truck and the subsequent pat down and search of his backpack. As a preliminary matter, we note that contrary to the State's assertions, even though Defendant was only a passenger in the truck, he may properly contest the lawfulness of his detention and seek to suppress evidence found as a result of that detention. *See State v. Portillo*, 2011-NMCA-079, ¶ 11, 150 N.M. 187, 258 P.3d 466 (observing that a defendant who was a passenger in a vehicle stopped by law enforcement had standing to challenge his detention, and to the extent that the defendant was illegally detained, he had standing to seek the suppression of any evidence obtained as a result of that detention), *cert. denied*, 2011-NMCERT-006, 150 N.M. 764, 266 P.3d 633. With this framework in mind, we review the district court's denial of Defendant's motion to suppress. We begin with the appropriate standard of review.

Appellate review of a motion to suppress presents a mixed question of fact and law. *State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861. We review

the district court's factual determinations under the substantial evidence standard, viewing the facts in a light favorable to the prevailing party. *State v. Ketelson*, 2011-NMSC-023, ¶ 9, 150 N.M. 137, 257 P.3d 957. We review the application of the law to the facts de novo. *Id.*

"It is well established that the initiation of a traffic stop constitutes a seizure of the vehicle's occupants." *Portillo*, 2011-NMCA-079, ¶ 12. However, "[a]n officer's continued detention of an individual, while lawful at the outset, may become unlawful if the officer unjustifiably expands the scope of the detention." *State v. Funderburg*, 2008-NMSC-026, ¶ 14, 144 N.M. 37, 183 P.3d 922. "Continued detention of a driver, or detention of passengers, for other investigative purposes, including investigatory questioning, requires reasonable suspicion, proven through specific articulable facts, that the driver or passenger has been or is engaged in a criminal activity other than the initial traffic violation." *State v. Affsprung*, 2004-NMCA-038, ¶ 11, 135 N.M. 306, 87 P.3d 1088; *see Leyva*, 2011-NMSC-009, ¶ 10 ("The scope of the investigation may be expanded where the officer has reasonable and articulable suspicion that other criminal activity has been or may be afoot." (internal quotation marks and citation omitted)). Accordingly, in this case, we must determine whether Deputy LeBoeuf had reasonable suspicion to detain Allen, Tidwell, and Defendant to investigate anything more than the altered temporary registration sticker.

At the outset, we note that Defendant moved to suppress the fruits of the searches of himself and his backpack under both the Fourth Amendment of the Federal Constitution and Article II, Section 10 of the New Mexico Constitution. Thus, we apply our interstitial approach, first analyzing whether Defendant's rights were protected under the Fourth Amendment and, if not, then determining whether Article II, Section 10 provides greater protections against unreasonable searches and seizures in this case. *Ketelson*, 2011-NMSC-023, ¶ 10; *see Leyva*, 2011-NMSC-009, ¶ 55 (noting that an officer's actions in the course of a valid traffic stop will be scrutinized differently under the Federal and New Mexico Constitutions, and explaining our analysis under Article II, Section 10, which provides greater protections than the Fourth Amendment).

**1. No Fourth Amendment Violation**

"The Fourth Amendment guarantees the right of the people to be free from unreasonable searches and seizures." *Leyva*, 2011-NMSC-009, ¶ 8. The focus of our inquiry under the Fourth Amendment in this case is whether, after making a valid stop, the officer's subsequent actions measurably extended the detention beyond the time needed to investigate the circumstances that initially justified the stop. *Id.* ¶¶ 19, 21. "Whether a detention becomes unreasonably prolonged depends on whether the police diligently pursued a means of investigation that was likely to confirm or dispel

their suspicions quickly, during which time it was necessary to detain the defendant." *Id.* ¶ 19 (internal quotation marks and citation omitted). An officer's actions subsequent to a valid stop are not reasonably related in scope to the circumstances that caused the initial stop if he or she detains the occupants of a vehicle beyond the time needed to investigate the reason for the stop, unless he or she developed reasonable suspicion of other criminal activity. *Id.*

In our Fourth Amendment analysis, we do not examine the content of questioning by law enforcement. *Id.* ¶ 17. However, we will find a violation of the Fourth Amendment when a detention is extended beyond the time reasonably needed to complete the underlying justification of the stop due to questioning that is unrelated to the initial stop and unsupported by reasonable suspicion. *Id.* ¶¶ 22-23. With these principles in mind, when determining whether an officer's conduct was diligent in the context of the Fourth Amendment, we assess whether the totality of the circumstances of the entire detention indicate that the duration of the detention was reasonable. *Id.* ¶ 22.

Defendant appears to make four arguments in support of his assertion that the length of his detention—approximately five minutes—was unreasonable under the Fourth Amendment. First, he contends that Deputy LeBoeuf's initial questioning of Allen and Tidwell impermissibly extended his detention. Second, he argues that his

detention was impermissibly extended because Deputy LeBoeuf should have immediately determined whether or not the truck was stolen rather than inquire about Allen and Tidwell's travel plans. Third, he argues that Deputy LeBoeuf violated his Fourth Amendment rights by conducting a pretextual drug investigation instead of investigating the altered temporary sticker. Finally, Defendant appears to assert that Deputy LeBoeuf's investigation into whether a drug crime was being committed and ordering Defendant out of the vehicle with Tidwell, resulting in an unlawful expansion of the original stop. We take each of these arguments in turn.

To the extent Defendant argues that Deputy LeBoeuf's questioning of Allen and Tidwell impermissibly extended his detention and expanded the scope of the stop because Deputy LeBoeuf lacked reasonable suspicion to investigate anything other than whether the temporary sticker was altered, we disagree. Deputy LeBoeuf testified that at the time he made contact with Allen at the secondary area of the checkpoint and requested she exit the vehicle to speak with him, he suspected that the truck might have been stolen. Deputy LeBoeuf testified that he based this suspicion on the altered temporary sticker, Allen's fidgety and very nervous behavior, and the lack of proof of ownership of the vehicle. Under the circumstances of this case, we conclude that at the point Deputy LeBoeuf made contact with Allen, he had reasonable suspicion to investigate whether the truck in which Defendant was a passenger may

13

have been stolen. *See Leyva*, 2011-NMSC-009, ¶ 23 ("Reasonable suspicion must consist of more than an officer's hunch that something is amiss; it requires objectively reasonable indications of criminal activity."); *see, e.g.*, *State v. Van Dang*, 2005-NMSC-033, ¶ 15, 138 N.M. 408, 120 P.3d 830 (concluding that it was reasonable for an officer to investigate whether a rental car, which he initially stopped for speeding, was stolen when the driver's name did not appear on the rental contract). Because Deputy LeBoeuf had developed reasonable suspicion to believe the truck may have been stolen, we measure the reasonableness of the length of the detention, not by the time needed to determine whether the temporary sticker had been altered, but by the time required to diligently investigate whether the truck was actually stolen. *See Leyva*, 2011-NMSC-009, ¶¶ 18-19 (explaining that the length of a stop is limited by the time required to investigate the initial justification of the stop unless the officer develops reasonable suspicion of additional criminal activity). Defendant does not argue that the actual length of time at this initial stage of the investigation was unreasonable, and we conclude that it was not.

To the extent Defendant contends that his detention was impermissibly extended when LeBoeuf questioned Allen and Tidwell about their travel plans instead of immediately determining whether or not the truck was stolen, we also disagree. Our review of the record and the findings by the district court establish that Deputy

LeBoeuf's questions to Allen and Tidwell about their travel plans were made within the first several minutes of the stop in the secondary area and were part of his investigation into whether the truck was stolen. *See Van Dang*, 2005-NMSC-033, ¶ 15 (stating that where an officer had reasonable suspicion to believe a vehicle may be stolen, the officer's questioning of the driver and the passenger about their travel plans was a reasonable step in that investigation). We conclude that these questions were part of Deputy LeBoeuf's diligent investigation into whether the truck was stolen and were aimed to quickly confirm or dispel his suspicion; accordingly, his questioning did not measurably extend Defendant's detention at the secondary area of the checkpoint. *See id.* ¶ 5 (holding that the twenty-five minute detention of a vehicle and its occupants was reasonable under the circumstances where the officer was investigating what appeared to be the driver's unauthorized use of a rental vehicle).

To the extent Defendant asserts that Deputy LeBoeuf prolonged his detention and thereby violated his Fourth Amendment rights by "launch[ing] a drug trafficking investigation" instead of investigating the altered temporary sticker, we conclude this assertion is not supported by the record. It appears that Defendant bases this contention on the one question LeBoeuf asked Tidwell regarding when he last used drugs. We do not scrutinize the subject matter of an officer's questioning in our Fourth Amendment analysis. *Leyva*, 2011-NMSC-009, ¶ 18. Therefore, we must only

15

determine whether this one question measurably extended the duration of the stop. *See id.* ¶¶ 21, 55; *Portillo*, 2011-NMCA-079, ¶¶ 19, 21. We conclude that Deputy LeBoeuf's one question to Tidwell about whether he was under the influence of narcotics—asked in the course of the investigation into whether the vehicle was stolen—did not appreciably extend the length of the stop as a whole. *See Portillo*, 2011-NMCA-079, ¶¶ 5, 21 (holding that an officer's questioning about narcotics and weapons did not appreciably extend a valid traffic stop when the officer did not have reasonable suspicion regarding contraband and asked the questions after issuing a citation).

Defendant also appears to argue that if Deputy LeBoeuf's investigation into whether truck was stolen was valid, it nevertheless ripened into an unlawful detention when Deputy LeBoeuf continued to detain the driver and her passengers to investigate whether a drug crime was being committed and when he ordered Defendant out of the vehicle. Under the facts presented, we disagree. During Deputy LeBoeuf's brief contact with Tidwell, he observed that Tidwell appeared to be under the influence of a depressant such as heroin. Deputy LeBoeuf testified that he had training and experience in identifying people under the influence of heroin. Although Tidwell denied being under the influence at that time, he admitted to having used a week and a half earlier. Deputy LeBoeuf testified that this statement was inconsistent with his

16

observations, and the district court agreed. We also conclude that based on his observations, knowledge, and training, Deputy LeBoeuf had developed reasonable suspicion to believe a drug crime may have been occurring and to extend the detention to investigate. *See Leyva*, 2011-NMSC-009, ¶ 23 ("Courts defer to the training and experience of the officer when determining whether particularized and objective indicia of criminal activity existed." (internal quotation marks and citation omitted)). Under the totality of the circumstances that became known to Deputy LeBoeuf at the secondary area of the checkpoint, we conclude that he diligently conducted his investigation into whether the truck was stolen, and in the course of that investigation, developed reasonable suspicion to investigate whether a drug crime was occurring. The short period of five or so minutes from the time the vehicle was ordered to the secondary area until the time Defendant exited the vehicle was reasonable under the Fourth Amendment. *See id.* ¶ 22 ("To determine whether questioning creates an unreasonable detention, the pertinent inquiry is whether the officer conducted the investigation *diligently*."). We determine that Defendant was not detained for a prolonged length of time in violation of Fourth Amendment rights and now turn to whether he is afforded any additional protection under the New Mexico Constitution.

**2.      No Article II, Section 10 Violation**

17

The key inquiry under both the Fourth Amendment and Article II, Section 10 is whether the government's intrusion upon an individual's liberty was reasonable. *Leyva*, 2011-NMSC-009, ¶ 22; *Ketelson*, 2011-NMSC-023, ¶ 20. The overall reasonableness of a search or seizure "depends on the balance between the public interest and the individual's interest in freedom from police intrusion upon personal liberty." *Ketelson*, 2011-NMSC-023, ¶ 20. In *Leyva*, our Supreme Court articulated the standard to determine whether a detention by law enforcement during a traffic stop was constitutionally reasonable:

> Article II, Section 10 requires that all questions asked during the investigation of a traffic stop be reasonably related to the initial reason for the stop. Unrelated questions are permissible when supported by independent reasonable suspicion, for reasons of officer safety, or if the interaction has developed into a consensual encounter.

*Leyva*, 2011-NMSC-009, ¶ 55. We recognize that "an officer does not have to ignore new information that becomes known to him after the initial stop[,]" and we consider "the circumstances originally warranting the stop, informed by what occurred, and what the officer learned, as the stop progressed." *State v. Sewell*, 2009-NMSC-033, ¶ 19, 146 N.M. 428, 211 P.3d 885 (internal quotation marks and citation omitted). When determining whether an officer had reasonable suspicion to expand the scope of a stop, we "must necessarily take into account the evolving circumstances with which the officer was faced" and find the detention reasonable if it "represents a

18

graduated response to the evolving circumstances of the situation." *Funderburg*, 2008-NMSC-026, ¶ 16 (alteration, internal quotation marks, and citation omitted). In this context, Article II, Section 10's requirement that an officer's questions must be reasonably related to the initial stop, or based on reasonable suspicion, "ensures that investigating officers do not engage in 'fishing expeditions' during traffic stops." *Leyva*, 2011-NMSC-009, ¶ 55.

Defendant concedes that there was reasonable justification for Deputy LeBoeuf to refer Allen to the secondary checkpoint to investigate whether the temporary registration sticker was altered. However, Defendant contends that Deputy LeBoeuf had no independent reasonable suspicion that a drug crime was being committed and, as a result, the expansion of the detention to question him about drugs was unlawful under Article II, Section 10. *See Funderburg*, 2008-NMSC-026, ¶ 24 (stating that "questions about drugs . . . are a separate and distinct line of questioning apart from and outside the scope of the initial justification for the stop, and must be supported by a showing of reasonable suspicion" (internal quotation marks and citation omitted)); *see also Portillo*, 2011-NMCA-079, ¶¶ 23-24 (holding that a defendant-passenger was subjected to illegal detention where an officer's conduct impermissibly expanded the scope of the detention when, after stopping a vehicle for speeding, the officer questioned the driver and passenger about weapons and narcotics without reasonable

suspicion). For the reasons that follow, we conclude that Deputy LeBoeuf had such independent reasonable suspicion.

Our analysis of whether reasonable suspicion existed for an officer to expand the scope of a detention to include questions about drugs is informed by whether a particular officer's training and experience "enhanced his ability to derive and articulate particularized and objective indicia of criminal activity." *Van Dang*, 2005-NMSC-033, ¶ 16; *see Leyva*, 2011-NMSC-009, ¶ 60 (noting that the district court appropriately gave weight to officer training and experience in its determination that the officer had reasonable suspicion to ask about weapons). Here, as we noted above, Deputy LeBoeuf testified that he had training and experience in recognizing the effects of illegal depressants, including heroin. Based on Deputy LeBoeuf's training and experience and his specific observations that Tidwell appeared to be under the influence of a depressant such as heroin, we cannot say that the district court erred in finding that Deputy LeBoeuf had reasonable suspicion to ask Tidwell about his drug use. *See State v. Candelaria*, 2011-NMCA-001, ¶ 21, 149 N.M. 125, 245 P.3d 69 (holding that an officer was justified in asking a defendant whether he had been smoking when the officer smelled marijuana in the vehicle), *cert. denied*, 2010-NMCERT-011, 150 N.M. 490, 262 P.3d 1143. Additionally, we conclude this one question, which expanded the stop, but did not in itself appreciably extend the

detention, was a minimal intrusion when balanced against the public's interest in preventing drug use. *See Funderburg*, 2008-NMSC-026, ¶ 27 (stating that an officer may "ask minimally intrusive questions to confirm or dispel" reasonable suspicion "arising from the traffic stop, as long as the questions are reasonable and intrude on a person's liberty as little as possible under the circumstances" (internal quotation marks and citation omitted)). To the extent Deputy LeBoeuf's question to Tidwell about his drug use expanded and extended the duration and scope of the detention as to Defendant, we conclude the detention was reasonable under the circumstances and represented a graduated response to the evolving situation. *See State v. Duran*, 2005-NMSC-034, ¶¶ 38, 42, 138 N.M. 414, 120 P.3d 836 (concluding that an officer permissibly expanded the scope of the stop after developing reasonable suspicion based on the officer's observations during the stop as well as the driver's responses to the officer's questions), *overruled on other grounds by Leyva*, 2011-NMSC-009.

Defendant asserts that his removal from the truck violated his constitutional rights either because Deputy LeBoeuf lacked reasonable suspicion that Defendant himself was involved in criminal activity or because his removal impermissibly extended his detention. Defendant does not develop this argument or provide supporting authority; accordingly, we do not consider the issue here. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (holding that an

appellate court will not consider an issue if no authority is cited in support of the issue). Nevertheless, having held that Deputy LeBoeuf had reasonable suspicion to investigate whether the truck was stolen and to suspect that Tidwell was under the influence of heroin, Deputy LeBoeuf was still conducting his investigation at the time he asked Defendant to exit the vehicle. Whether Defendant was in the cab of the truck or outside did not unduly extend or expand the length of the detention.

Defendant relies on *State v. Ochoa*, 2009-NMCA-002, 146 N.M. 32, 206 P.3d 143, to argue that Deputy LeBoeuf's extended detention of Defendant was impermissible because the basis for the detention was a "pretextual drug investigation." Defendant contends that *Ochoa*'s reasoning should apply here, asserting that Deputy LeBoeuf exceeded his authority by detaining Defendant on an unsupported hunch of drug trafficking. In *Ochoa*, we held that a traffic stop is pretextual, and thus violates Article II, Section 10, if the real purpose of the stop is unsupported by reasonable suspicion or probable cause, or if the officer would not otherwise have stopped the vehicle. *Ochoa*, 2009-NMCA-002, ¶ 40; *see also State v. Gonzales*, 2011-NMSC-012, ¶ 3, 150 N.M. 74, 257 P.3d 894 (interpreting *Ochoa* "to require a determination whether the real reason for the stop is supported by objective evidence of reasonable suspicion"). Here, however, the parties agree that

22

the initial stop and the initial detention at the secondary area of the checkpoint were justified. *Ochoa* and *Gonzales* are therefore not applicable in this context.

The district court found that at the time Deputy LeBoeuf had Tidwell and Defendant exit the truck, the officer's observations and the information he had received from the occupants of the truck led him to reasonably expand his inquiry to investigate his suspicion regarding drug use. In light of the totality of the circumstances known at the time Defendant got out of the truck, we affirm the district court and conclude that the officer's suspicions about whether the vehicle was stolen and whether a drug crime was occurring were based on specific articulable facts that Deputy LeBoeuf learned over the course of the five minute stop. Defendant's detention at the point he exited the vehicle was constitutionally sound under Article II, Section 10.

After Defendant exited the vehicle, he was subjected to a pat down for officer safety. In the course of the pat down, Deputy Wall discovered what, in his training and experience, he believed to be marijuana. Defendant does not challenge the legality of the pat down but argues that the district court should have suppressed the evidence of marijuana because it was the fruit of what at that time was an illegal detention. Having held the detention of Defendant was not unduly prolonged and was reasonable, we conclude that the district court did not err in denying Defendant's

motion to suppress the fruits of the detention and subsequent search of Defendant and his backpack.

It is uncontested that at the point Deputy LeBoeuf learned Defendant had marijuana on his person, he developed additional reasonable suspicion to expand the scope of the stop to investigate whether the vehicle contained evidence of illegal drug activity. *See Funderburg*, 2008-NMSC-026, ¶ 28 (concluding that the officer had reasonable suspicion that evidence of a drug crime might be found in the vehicle when the officer had actual knowledge of drug activity by another occupant of the vehicle). Defendant asserts that after the handcuffs were removed and he was cited for the marijuana, he was told to stand at the scene and, therefore, was in custody during the pendency of the drug investigation. We now examine whether Defendant was in custody and whether he should have been given *Miranda* warnings.

**Defendant Was Not In Custody**

Defendant argues that the district court erred when it found Defendant was not in custody at the time the canine unit searched the car and law enforcement subsequently questioned Defendant. Defendant contends that he was in custody for the purposes of *Miranda* and that law enforcement should have advised him of his rights against self-incrimination before questioning him about the red backpack and its contents. Again, we begin with the standard of review.

24

*Miranda* warnings are required to protect a suspect's Fifth Amendment rights against self-incrimination when an individual is "subjected to the inherently compelling pressures of custodial police interrogations." *State v. Olivas*, 2011-NMCA-030, ¶ 10, 149 N.M. 498, 252 P.3d 722, *cert. denied*, 2011-NMCERT-003, 150 N.M. 619, 264 P.3d 520. "An officer's obligation to administer *Miranda* warnings arises only when a person is (1) interrogated while (2) in custody." *State v. Wilson*, 2011-NMSC-001, ¶ 48, 149 N.M. 273, 248 P.3d 315 (alteration, internal quotation marks, and citation omitted). "Whether a defendant was subject to a custodial interrogation . . . [is a] legal determination[] that we review de novo." *Olivas*, 2011-NMCA-030, ¶ 8. In reviewing the district court's ruling on Defendant's motion to suppress, we apply the substantial evidence standard to the factual findings and view the facts in the light most favorable to the prevailing party. *Id.* "[W]e indulge in all reasonable inferences in support of the district court's ruling and disregard all evidence and inferences to the contrary." *Id.* (internal quotation marks and citation omitted). Here, it is uncontested that the officers asked Defendant questions that they knew were likely to elicit incriminating responses regarding drug use and possession; therefore, the sole issue we consider is whether Defendant was in custody when questioned.

"Custody is defined as either (1) formal arrest, or (2) a restraint on freedom of movement of the degree associated with a formal arrest." *State v. McNeal*, 2008-NMCA-004, ¶ 10, 143 N.M. 239, 175 P.3d 333 (internal quotation marks and citation omitted); *Olivas*, 2011-NMCA-030, ¶ 10. The test to determine whether an individual was in custody is an objective one, and the only relevant inquiry is how a reasonable person in the individual's position would have understood his or her situation. *Olivas*, 2011-NMCA-030, ¶ 14. Not all detentions by law enforcement officers rise to the level of custody, and the questioning of an individual during an investigatory detention that is supported by an officer's reasonable suspicion is generally not considered a custodial interrogation subject to *Miranda*. *State v. Smile*, 2009-NMCA-064, ¶ 26, 146 N.M. 525, 212 P.3d 413, *cert. quashed*, 2010-NMCERT-006, 148 N.M. 584, 241 P.3d 182; *see Armijo v. State ex rel. Transp. Dep't*, 105 N.M. 771, 773-74, 737 P.2d 552, 554-55 (Ct. App. 1987) ("The roadside questioning of a motorist pursuant to a routine traffic stop does not constitute custodial interrogation."), *but see Olivas*, 2011-NMCA-030, ¶¶ 12, 14-15 (holding that the defendant was in *Miranda* custody when he was handcuffed and transported to the district attorney's office, interrogated, never told he was not under arrest or free to terminate the interview, and his movements were restricted by officers because he was not allowed to leave the interrogation room without police escort); *State v. Wilson*, 2007-NMCA-111, ¶ 19,

142 N.M. 737, 169 P.3d 1184 (noting that, in some situations, such as when an officer uses handcuffs, puts the suspect in a police vehicle, or uses force, an investigatory detention can become the equivalent of custody such that the *Miranda* warnings are required). Unlike custodial interrogations, "investigatory detentions, such as traffic stops, do not implicate the Fifth Amendment . . . since investigatory detentions are generally public, temporary, and substantially less coercive than custodial interrogations[.]" *State v. Snell*, 2007-NMCA-113, ¶ 12, 142 N.M. 452, 166 P.3d 1106 (internal quotation marks and citation omitted). Moreover, the fact that an officer has focused his investigation on a particular suspect at the time of questioning does not necessitate *Miranda* warnings. *State v. Swise*, 100 N.M. 256, 258, 669 P.2d 732, 734 (1983).

In a case such as this, where no formal arrest occurred prior to questioning by law enforcement, we "engage in a fact-specific analysis of the totality of the circumstances under which the questioning took place in order to decide whether the custody requirement is met." *Olivas*, 2011-NMCA-030, ¶ 10. Our Supreme Court has identified factors to guide our inquiry, including "the purpose, place, and length of interrogation, the extent to which the defendant [was] confronted with evidence of guilt, the physical surroundings of the interrogation, the duration of the detention, and

the degree of pressure applied to the defendant." *Id.* (alteration, internal quotation marks, and citation omitted); *Wilson*, 2011-NMSC-001, ¶ 48.

Defendant asserts that he was in custody at the time he was asked who the red backpack belonged to and during the subsequent search of the backpack. Defendant argues that he was in custody based on the following facts:  he was detained at the secondary checkpoint, late at night, after having been handcuffed, cited for possession of marijuana, released from handcuffs, and told to stand to the side while the investigation into the vehicle continued, and he was never told he was free to leave. Defendant contends that this was the sort of "coercive atmosphere against which *Miranda* was developed to protect." *Swise*, 100 N.M. at 258, 669 P.2d at 734.  The State responds that Defendant was not in custody and that after he was released from the handcuffs, he was just standing around watching the events unfold until the canine unit arrived, and the dog alerted to the red backpack.  The State also argues that Defendant was not in custody after the dog alerted to the red backpack because the officers did not take any action with regard to Defendant that would make a reasonable person believe he was under arrest.

Defendant directs us to *State v. Munoz*, 1998-NMSC-048, 126 N.M. 535, 972 P.2d 847, *State v. Nieto*, 2000-NMSC-031, 129 N.M. 688, 12 P.3d 442, and *Olivas*, 2011-NMCA-030, as determinative of whether he was in custody.  In each of these

28

cases, the defendants challenged a ruling that they were not in custody for *Miranda* purposes at the time they made incriminating statements to the police. However, in each case, the defendants came into contact with the police after law enforcement sought them out for questioning, and the lower courts' determination of whether the defendants were subject to custodial interrogation took into consideration the defendants' willingness to leave their homes and meet with law enforcement either in a police vehicle or office. *See Nieto*, 2000-NMSC-031, ¶ 21 (holding that the defendant was not in custody when the defendant was asked and agreed to accompany officers to the station for questioning and was free to leave or terminate the interview); *Munoz*, 1998-NMSC-048, ¶¶ 3, 5, 44 (holding that the defendant was not in custody when FBI agents went to the defendant's home to speak with him and before the defendant got into the agents' car, they explained he did not have to go with them and that he was not under arrest and he was not restrained), *but see Olivas*, 2011-NMCA-030, ¶¶ 11, 16 (holding that the defendant was in custody when he agreed to go to the district attorney's office for questioning but was handcuffed and transported in a police vehicle and escorted by officers at all times).

Here, in contrast, Defendant's contact with law enforcement arose from a valid traffic stop at the sobriety checkpoint that evolved into a lawful detention to investigate Deputy LeBoeuf's reasonable suspicion that the truck was stolen and that

29

the truck may contain evidence of illegal drugs. Because Defendant's presence at the secondary area was not voluntary, the applicability of the cases cited by Defendant is limited here. We consider a *Miranda* case arising out of roadside investigatory detention to assist us in determining whether the initial investigatory detention to which Defendant was subject ripened into a custodial interrogation.

In *Snell*, this Court explained the difference between a traffic stop and a custodial interrogation. 2007-NMCA-113, ¶ 13. In that case, we said that "if a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him in custody for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." *Snell*, 2007-NMCA-113, ¶ 14 (internal quotation marks and citation omitted). We reasoned that the conduct of the police exerted the sort of coercive pressure that sufficiently impaired the driver's free exercise of his privilege against self-incrimination where the police threatened him with arrest, physically escorted him to the police car, placed him in the back seat where they left him until they returned to question him, and then questioned him while he was locked in the back of the car or otherwise blocked from exiting the vehicle. *Id.* Additionally, we noted that unlike *Munoz*, where the police questioning took place in a vehicle in a public parking lot during the day, in *Snell* the questioning took place after dark in a snowstorm that would have impaired visibility and prevented people

30

driving by from seeing what was taking place in the police car. *Snell*, 2007-NMCA-113, ¶ 21.

Defendant's case is distinguishable from *Snell*. In *Snell*, the traffic stop rose to the level of custodial interrogation because the defendant was confined in the back seat of a locked police car on a night with poor visibility. Here, the detention took place at a secondary area of a sobriety checkpoint, Defendant was never confined, and Allen and Tidwell were both present when the canine searched the vehicle and the officer asked who the bag belonged to. *See State v. Javier M.*, 2001-NMSC-030, ¶ 23, 131 N.M. 1, 33 P.3d 1 (reasoning that the defendant was not in custody because police questioning took place in front of ten to fifteen other suspects, so it was sufficiently public). Additionally, here the secondary area of the checkpoint on the side of the highway was well lit, and unlike the dark snowy night in *Snell*, police actions were more likely to be visible to passing motorists.

Defendant contends that the citation for marijuana possession is a factor to consider here. However, the issuance of a citation does not elevate the investigatory detention to custodial interrogation. *See Javier M.*, 2001-NMSC-030, ¶ 21. Defendant points to the fact that he had been handcuffed, but he also concedes that at the time of the search of the vehicle and subsequent questioning, he was not in handcuffs nor was he restrained by the officers in anyway. After the canine alerted

31

to his backpack, we recognize that Defendant may have believed that he could be arrested. However, we have previously held that a defendant's subjective belief as to whether he would be arrested does not affect our conclusion as to whether the defendant was in custody at the time he made incriminating statements to the police. *Smile*, 2009-NMCA-064, ¶ 31.

While we agree with Defendant that, under the circumstances, a reasonable person in his position might not have felt free to leave the secondary area of the checkpoint, we are not persuaded that his freedom was restrained so as to rise to the level of formal arrest. *See Armijo*, 105 N.M. at 773, 737 P.2d at 554 ("The fact that the motorist may temporarily feel that he is not free to leave does not render him 'in custody' for purposes of *Miranda*."). Instead, at the time of the canine search and thereafter, Defendant was not in custody but rather was subject to an investigatory detention. *See Wilson*, 2007-NMCA-111, ¶ 18 ("An investigatory detention occurs when an officer briefly detains and investigates a person based on reasonable suspicion of criminal activity."). After Deputy LeBoeuf developed reasonable suspicion that evidence of criminal activity could be found in the truck, he summoned the canine unit. We have previously held that the use of a drug dog to conduct a narcotics investigation is a minimal intrusion, particularly when balanced against the government's significant interest in preventing the use and distribution of illegal

32

substances. *See State v. Robbs*, 2006-NMCA-061, ¶ 22, 139 N.M. 569, 136 P.3d 570. At the point the canine unit arrived, the truck and its occupants had been detained for about twenty-five minutes, a reasonable length of time under the circumstances. *See Robbs*, 2006-NMCA-061, ¶¶ 23, 25 (holding that a forty-minute detention while waiting for a canine unit was permissible where the officers had reasonable suspicion). We conclude that the seizure in this case did not rise to the level of custody to trigger Fifth Amendment protections. *See McNeal*, 2008-NMCA-004, ¶¶ 7, 10 (holding that the defendant was seized, but not in custody, after being told to step off the bus on which he was a passenger as part of a narcotics investigation and questioned about the contents of his luggage). "The privilege against self-incrimination is not necessarily implicated whenever a person is compelled in some way to cooperate in developing evidence which may be used against him." *Armijo*, 105 N.M. at 773, 737 P.2d at 554. Accordingly, although Defendant was detained, he was not obligated to respond to the officer's questioning and, thus, there is no Fifth Amendment violation. *See Javier M.*, 2001-NMSC-030, ¶ 19 ("During such investigatory detentions, the detainee is not obliged to respond and, therefore, there is no violation of the privilege against self-incrimination."). Unless a defendant is in custody, "[o]n the scene questioning does not require advisement of *Miranda* rights." *Armijo*, 105 N.M. at 774, 737 P.2d at 555; *see Javier M.*, 2001-NMSC-030, ¶ 19 ("Police officers are not constitutionally

mandated to forewarn citizens subject to investigatory detentions that they have the right not to answer the officer's questions."). We hold the district court did not err in denying Defendant's motion to suppress the incriminating statements he made to the police while subject to an investigative detention.

**CONCLUSION**

We conclude the district court's denial of Defendant's motion to suppress was proper, and we affirm.

**IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**I CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

**TIMOTHY L. GARCIA, Judge (dissenting)**

**GARCIA, Judge (dissenting).**

I respectfully dissent in this case. Even viewing the facts in the light most favorable to the State, reasonable suspicions did not exist for Deputy LeBoeuf to expand the traffic stop that was originally based upon an altered registration sticker into an investigation for illegal drugs. Because the subsequent questioning, search, and seizure of Defendant occurred after the illegal expansion of this traffic stop, Article II, Section 10 of the New Mexico Constitution requires the suppression of the narcotics seized from Defendant.

The majority correctly recognizes that during a routine traffic stop, reasonable suspicion of other criminal activity may arise based upon the "evolving circumstances facing an officer." *Sewell*, 2009-NMSC-033, ¶ 22 (internal quotation marks and citation omitted). In addition, the length of this particular detention was not unreasonable, including the additional time Deputy LeBoeuf used to expand his initial inquiry into questions about drug use. *See Van Dang*, 2005-NMSC-033, ¶ 15. The questioning about drugs occurred during the time frame that Deputy LeBoeuf was also legitimately investigating the issue of the altered registration sticker on the truck. It is the scope of the detention that is at issue, and whether Deputy LeBoeuf had the requisite reasonable suspicion to lawfully expand the scope of the investigation into an inquiry about illegal drugs.

Without reasonable suspicion, an expansion of a routine traffic stop into an inquiry about drugs is a violation of Defendant's rights under Article II, Section 10. *See Leyva*, 2011-NMSC-009, ¶¶ 53-55. "[R]easonable suspicion . . . requires that officers articulate a reason, beyond a mere hunch, for their belief that an individual has committed a criminal act." *Funderburg*, 2008-NMSC-026, ¶ 15 (internal quotation marks and citation omitted). This requirement extends to "all questions asked during the stop . . . [and] ensures that investigating officers do not engage in 'fishing expeditions' during traffic stops." *Leyva*, 2011-NMSC-009, ¶ 55 (citation omitted). We use a "fact-based, case-by-case approach to determine what questions are reasonably related to the initial justification for the stop and whether an officer had reasonable suspicion to expand the scope of his or her search or seizure during an investigatory stop." *Id.* ¶ 54 (internal quotation marks and citation omitted).

It is not disputed that Deputy LeBoeuf had reasonable suspicion to investigate the issues involving the altered registration sticker and the ownership of the truck. The issue is whether the abrupt expansion into questions about illegal drugs was simply a "hunch" and a "fishing expedition," or whether Deputy LeBoeuf's question to Tidwell was grounded in a particularized and objective basis for suspecting him of criminal activity. *See Funderburg*, 2008-NMSC-026, ¶ 15. I cannot conclude that the factual circumstances in this case establish a reasonable basis for Deputy LeBoeuf to

shift the initial investigation and suddenly ask passenger Tidwell, "When was the last time you used [drugs]?"

The majority relies upon the totality of the evolving circumstances known to Deputy LeBoeuf as the basis to establish reasonable suspicion for the sudden expansion of the investigation into questions about illegal drugs. Majority Opinion, pp. 18-24. Deputy LeBoeuf testified that he had training and experience to recognize certain characteristics of a person that might be under the influence of depressants. "Not specifically heroin, but we do get training on stimulants or like depressants and their effects and their characteristics as it would be on a person." Based upon this generalized training about "characteristics" of a person on depressants, Deputy LeBoeuf identified the totality of the circumstances that established his objectively reasonable basis to suddenly ask Tidwell about illegal drug use as follows: "Because of his eyelids, because of his known history to local law enforcement as having used or being in the drug business . . . [b]ased on previous knowledge of his actions, of his history, plus his physical demeanor, his droopy eyes, his sleepy look, [s]o I asked him that question."

I disagree with the majority's determination that reasonable suspicion of illegal drug activity is established when an officer encounters a person with a known drug use history, in the passenger seat of a truck near 11:00 p.m. at night, with droopy eyes

37

and a sleepy look. I consider this inquiry a classic example of a fishing expedition based upon Deputy LeBoeuf's personal speculation, guess, conjecture, and hunch.

First, it is a matter of common knowledge that depressants are available in numerous products sold over the counter and by prescription. Even if Tidwell was taking a depressant, it would be speculation to immediately assume, without asking, that this characteristic reasonably translates into heroin use or any other illegal drug activity. Second, it is also common knowledge that people are often sleepy around 11:00 p.m. To assume that Tidwell's signs of droopy eyes or his sleepy look at that hour of the night reasonably translates into illegal drug activity is also nothing more than a hunch. Detective LeBoeuf's hunch, whether correct or not, had nothing to do with an altered registration sticker or the desire to identify the owner of the truck. If this factual situation qualifies as reasonable suspicion that criminal drug activity is afoot, then any passenger with a drug history can be questioned at a traffic stop about illegal drugs when they look sleepy or drowsy late in the night. I cannot hold that these circumstances establish an objectively reasonable basis to expand a traffic stop into a inquiry about illegal drugs.

In conclusion, I do not concur with the result reached by the majority in this case. As a result, Defendant's motion to suppress the drugs seized at the traffic stop

in this case should have been granted by the district court.

_____

**TIMOTHY L. GARCIA, Judge**